2015 COA 109

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

**v.**

**Pamela Kathleen BOYD, Defendant–Appellant.**

**Court of Appeals No. 12CA2607**

Colorado Court of Appeals,
Div. IV.

Announced August 13, 2015

Cynthia H. Coffman, Attorney General, Kevin E. McReynolds, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Douglas K. Wilson, Colorado State Public Defender, Sean J. Lacefield, Deputy Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE MILLER

¶ 1 Defendant, Pamela Kathleen Boyd, appeals the judgment of conviction entered on a jury verdict finding her guilty of attempted distribution of marijuana and possession of marijuana. We affirm the attempted distribution conviction, reverse the possession conviction, and remand the case to the trial court with directions.

¶ 2 In *People v. Russell*, 2014 COA 21M, 396 P.3d 71 (*cert. granted* Feb. 23, 2014), a division of this court[1] examined section 16(3)(a) of article XVIII of the Colorado Constitution (section 16 is popularly known as Amendment 64), which decriminalized the possession of one ounce or less of marijuana. The division applied section 16(3)(a) retroactively to convictions pending appeal on December 10, 2012, when the amendment be-

came effective. *Russell,* ¶ 20. Defendant in this case relies on *Russell* in asking this division to vacate her possession conviction. The People point out that this division is not bound by the *Russell* division, *see People v. White*, 179 P.3d 58, 60–61 (Colo.App.2007), assert that *Russell* was wrongly decided, and ask us to affirm that conviction.

¶ 3 Because the People rely on the same arguments they made in *Russell,* we might be tempted to reject those arguments for the reasons set forth in the *Russell* opinion and reverse the possession conviction with little further discussion. We resist that temptation, however, in light of the thoughtful and carefully researched opinion by Judge Bernard (hereinafter the dissent), which identifies significant issues of substance not raised by the People in either Russell or this case. In recognition of our authority to affirm the trial court's judgment on any ground supported by the record, see *People v. Quintana*, 882 P.2d 1366, 1371 (Colo.1994), we address those issues as well as the People's.

¶ 4 After briefly reviewing the factual and procedural background of the case, we turn first to a separate issue concerning comments by the trial court; if defendant were to prevail on that issue, we would reverse both the possession and attempted distribution convictions.

## I. Background

¶ 5 An undercover police officer approached defendant and her boyfriend while they were in the boyfriend's van. The officer purchased marijuana from the boyfriend. The boyfriend put the cash received from the officer on the van's dashboard. Defendant and her boyfriend then drove away. Other police officers stopped the van and arrested defendant and her boyfriend. The officers found a small amount of marijuana and the cash from the undercover officer in defendant's pocket.

¶ 6 A jury convicted defendant of possession of marijuana and attempted distribution of marijuana. The trial court held a hearing and found that defendant was subject to a sentence enhancer on the attempted distribu-

---

1. The author of this opinion was also the author of the opinion in *Russell.*

tion conviction because she had been previously convicted of distribution of marijuana.

## II. Trial Court's Comments

 ¶ 7 Defendant contends, for the first time on appeal, that certain comments by the trial court during voir dire incorrectly instructed the prospective jurors, including those ultimately seated, regarding the presumption of innocence. We are not persuaded.

¶ 8 The trial court explained the presumption of innocence and the prosecutor's burden of proof to the jury:

[T]he Prosecution has to prove, beyond a reasonable doubt, that [defendant] is guilty.

If the Prosecution does that, then it will be your duty, as jurors, to say she's guilty. If the Prosecution doesn't meet that standard, then it will be your obligation, as jurors, to say she's not guilty.

Not that she's innocent, notice, but that she's not guilty. And that means not proven beyond a reasonable doubt.

. . .

[I]t's better to acquit 100 guilty people than to convict one innocent person.

You can agree with that, or disagree with that. That's not part of the Constitution. But I've heard that as an explanation for why we have such a high burden of proof before somebody can be found guilty of a crime, that that's such a serious judgment that we ought to be sure, at least as sure as we can, which is sure beyond a reasonable doubt, before we say somebody broke the law.

And if the District Attorney doesn't prove [defendant is guilty beyond a reasonable doubt], find her not guilty, which, again, doesn't mean she's innocent anymore [sic] than any of us is innocent, in the sense of a newborn baby.

It just means not proven.

¶ 9 Defendant's counsel did not contemporaneously object to these comments. However, defendant argues now that the comments were "self-defeating" in that they unnecessarily diluted the significance and confused the meaning of the presumption of innocence for the jury.

 ¶ 10 Because defendant failed to object, we review only for plain error. *Hagos v. People*, 2012 CO 63, ¶ 14, 288 P.3d 116. Plain error review is limited to "particularly egregious errors" that are both obvious and substantial. *Id.* "We reverse under plain error review only if the error so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *Id.* (internal quotation marks omitted).

¶ 11 Defendant cites *Martinez v. People*, 172 Colo. 82, 88–89, 470 P.2d 26, 29–30 (1970), in support of his argument that it is incorrect for the trial court to give an instruction implying that the presumption of innocence allows guilty persons to go free. In that case, the trial court had given what was then a stock instruction that the presumption of innocence

is not intended to aid anyone who is in fact guilty of crime, to escape, but is a humane provision of the law, intended, so far as human agencies can, to guard against the danger of an innocent person being unjustly punished.

*Id.* at 87–88, 470 P.2d at 29. While the supreme court reversed the conviction on other grounds, it held that the instruction was not a good statement of the law and should not be given in future cases. *Id.* at 87, 470 P.2d at 29

¶ 12 We agree with defendant that the trial court's comments—though, in our view, not an instruction—were not a good statement of the law. In accordance with *Martinez*, the court should have avoided any comment during voir dire that implied that the presumption of innocence allows guilty defendants to avoid conviction. However, because these remarks by the trial court did not reflect adversely on defendant or on the issue of her innocence, we do not perceive them to be egregious or prejudicial. *See People v. Martinez*, 224 P.3d 1026, 1030 (Colo.App.2009) ("[C]asual remarks by the trial court ... do not constitute reversible error unless they reflect adversely upon the defendant or upon the issue of his or her guilt or innocence."),

*aff'd on other grounds,* 244 P.3d 135 (Colo. 2010).

¶ 13 Taken in context, these comments explained how high the prosecution's burden of proof is and attempted to explain that a verdict of not guilty simply means that the prosecution has not met its burden. Moreover, any risk of prejudice here was mitigated by the court's written jury instructions, which correctly articulated the burden of proof and the presumption of innocence and which we presume the jury understood and correctly applied. *See People v. Estes,* 2012 COA 41, ¶ 12, 296 P.3d 189; *People v. Lucas,* 232 P.3d 155, 163 (Colo.App.2009). Thus, although we disapprove the court's explanation as confusing, it did not constitute plain error in this case. *See Estes,* ¶ 12.

### III. Retroactivity of Amendment 64

¶ 14 Defendant asserts Amendment 64 applies retroactively to decriminalize her possession of marijuana, as held in *Russell,* and, consequently, her conviction for possession of less than one ounce of marijuana should be vacated. We agree.

¶ 15 In construing a constitutional amendment, our goal is to determine and give effect to the will of the people in adopting it. *Huber v. Colo. Mining Ass'n,* 264 P.3d 884, 889 (Colo.2011). We apply general rules of statutory construction in construing citizen-initiated measures. *Id.* One of these rules is that we presume that when the legislature enacts a statute, it is aware of its own enactments and existing case law precedent. *See Anderson v. Longmont Toyota, Inc.,* 102 P.3d 323, 330 (Colo.2004). We therefore make the same presumption with regard to the drafters of a citizen-initiated measure. In addition, we must adopt a construction that avoids or resolves potential conflicts, giving effect to all legislative acts, if possible. *Huber,* 264 P.3d at 892. Finally, we avoid interpretations that lead to unjust, absurd, or unreasonable results. *Id.* at 889.

### A. *Russell* and *Thomas*

¶ 16 Section 16(3) provides that possession of one ounce or less of marijuana and certain other acts "are not unlawful." Section 16(9) provides that all provisions of Amendment 64 "shall become effective upon official declaration of the vote hereon by proclamation of the governor...." The governor made the proclamation on December 10, 2012. 2013 Colo. Sess. Laws 3300.

¶ 17 In *Russell,* a division of this court concluded that section 16(3)(a) applies retroactively to convictions for possession of less than one ounce of marijuana that were pending appeal on December 10, 2012. *Russell,* ¶ 20.

¶ 18 The analysis in *Russell* is based on a statute and the common law. *See Russell,* ¶ 12. The statutory source is the identically worded predecessor to current section 18–1–410(1)(f)(I), C.R.S. 2014, which enabled a convicted defendant to request postconviction relief when "there has been significant change in the law, applied to the applicant's conviction or sentence, allowing in the interests of justice retroactive application of the changed legal standard." Ch. 152, sec. 2, § 40–1–510(1)(f), 1973 Colo. Sess. Laws 533.

¶ 19 The judicial source is *People v. Thomas,* 185 Colo. 395, 525 P.2d 1136 (1974), where the court applied this statute, explaining: "The view that amendatory legislation mitigating the penalties for crimes should be applied to any case which has not received final judgment finds *substantial support in the common law.*" *Id.* at 398, 525 P.2d at 1138 (emphasis added). In *Thomas,* the court applied this doctrine to give a convicted defendant the benefit of a statute enacted eight months after his sentencing while his appeal was pending. *Id.* at 396, 525 P.2d at 1137–38.

¶ 20 A few months later, the court applied this doctrine to direct appeals, as well as postconviction motions, in *People v. Thornton,* 187 Colo. 202, 203, 529 P.2d 628, 628 (1974). The defendant in *Thornton* had filed a direct appeal under then-applicable section 40–1–509, Ch. 121, sec. 1, § 40–1–509, 1971 Colo. Sess. Laws 401–02 (now codified as section 18–1–409, C.R.S. 2014), which is limited to appeals of sentences in felony cases. The supreme court held that although *Thomas* was decided in the context of postconviction relief under section 40–1–410(1)(f), "there is no valid reason not to grant similar

relief under the *Thomas* rule, where, as here, the application for relief is sought by direct appeal under section 40–1–509." *Thornton*, 187 Colo. at 203, 529 P.2d at 628. Notwithstanding the reference to former section 40–1–509 in *Thornton*, the supreme court subsequently applied the *Thomas* rule to accord the benefits of amendatory legislation retroactively on a direct appeal of a defendant's conviction and sentence. *See People v. Truesdale*, 190 Colo. 286, 288, 290, 546 P.2d 494, 495, 497 (1976).[2]

¶ 21 Since *Thornton*, both the supreme court and the court of appeals have consistently applied the *Thomas* rule to give convicted criminal defendants the "benefit of amendatory legislation which became effective at any time before the conviction became final on appeal." *People v. Griswold*, 190 Colo. 136, 137, 543 P.2d 1251, 1252 (1975); *see also People v. Montgomery*, 737 P.2d 413, 414 n. 4 (Colo.1987); *People v. Bloom*, 195 Colo. 246, 251–52, 577 P.2d 288, 292 (1978); *Glazier v. People*, 193 Colo. 268, 269, 565 P.2d 935, 936 (1977); *Truesdale*, 190 Colo. at 290, 546 P.2d at 497; *Naranjo v. Dist. Court*, 189 Colo. 21, 23, 536 P.2d 36, 37 (1975); *Shook v. Dist. Court*, 188 Colo. 76, 78–79, 533 P.2d 41, 42 (1975); *McClure v. Dist. Court*, 187 Colo. 359, 360–61, 532 P.2d 340, 341–42 (1975); *People v. Race*, 187 Colo. 204, 205, 529 P.2d 629, 630 (1974); *People v. White*, 804 P.2d 247, 249–50 (Colo.App.1990); *People v. Palmer*, 42 Colo.App. 460, 461–63, 595 P.2d 1060, 1062–63 (1979); *People v. Jenkins*, 40 Colo.App. 140, 143, 575 P.2d 13, 15–16 (1977). We must assume that the drafters of Amendment 64 were aware of this precedent and of section 18–1–410(1)(f). *See Anderson*, 102 P.3d at 330.

### B. Application to the Present Case

¶ 22 The present case, like *Russell*, falls within the pattern established by this line of cases. Defendant was convicted and sentenced under the pre-Amendment 64 statute making possession of even a small amount of marijuana unlawful. Shortly after sentencing, Amendment 64 was adopted, "significant[ly] chang[ing] ... the law," § 18–1–410(1)(f)(I), to eliminate and thus mitigate the penalty for persons convicted of possessing one ounce or less of marijuana. Accordingly, under the *Thomas* rule, defendant should receive the benefit of this change and have her conviction vacated.

¶ 23 The supreme court and court of appeals have consistently applied this analysis when changes in the law resulted in substantially more lenient treatment for persons possessing marijuana. In *Bloom*, the court reduced the defendant's sentence of five to twelve years in the custody of the Department of Corrections to a maximum of one year based on the enactment, after the defendant committed the marijuana possession offense, of a statute reducing the offense from a felony to a misdemeanor. 195 Colo. at 251, 577 P.2d at 292. The court held that the defendant was entitled to the benefit of the change in the law under the *Thomas* rule. *Id.*

¶ 24 The change was even more dramatic in *Glazier* where the defendant was sentenced to five to eight years for possession of over one-half ounce of cannabis, but received the benefit of a legislative change reducing the crime of possession of less than one ounce to a petty offense and the penalty to a $100 fine. The court explained: "As we have repeatedly held, a defendant is entitled to the benefits of amendatory legislation

2. The dissent argues that, despite the holdings in *People v. Thomas*, 185 Colo. 395, 525 P.2d 1136 (1974), *People v. Thornton*, 187 Colo. 202, 529 P.2d 628 (1974), and *People v. Truesdale*, 190 Colo. 286, 546 P.2d 494 (1976), section 18–1–409, C.R.S. 2014, bars direct review of defendant's claim that section 16(a)(3) applies to her conviction and attendant sentencing. We are not persuaded that either those holdings or the text of the statute compel such a result, because defendant challenges her conviction, not the sentence imposed. *See People v. Thompson*, 942 P.2d 1242, 1243 (Colo.App.1996). Further, such a construction of the case law and statute would result in an unnecessary multiplication of proceedings, substantial judicial inefficiencies, and unfairness to defendants in Ms. Boyd's position. Specifically, the parties have already briefed the issue, but under the alternative approach, defendant would be required to institute an entirely new proceeding in which the parties must repeat their arguments, despite the willingness of the People to resolve the matter in this court. *See Huber v. Colo. Mining Ass'n*, 264 P.3d 884, 892 (Colo.2011) (court must avoid interpretations that lead to unjust or unreasonable results).

when relief is sought before finality has attached to the judgment of conviction." 193 Colo. at 269, 565 P.2d at 936; *see also Palmer*, 42 Colo.App. at 461–62, 595 P.2d at 1062 (giving the defendant the benefit of a reduction in the maximum penalty from two to fifteen years to a maximum $100 fine).

¶ 25 Accordingly, under the long-established *Thomas* rule and section 18–1–410(1)(f), defendant is entitled to the ameliorating effect of Amendment 64.

### C. The People's and Dissent's Arguments

¶ 26 The People do not argue that *Russell* does not apply to defendant; rather, they and the dissent contend that *Russell* was wrongly decided for several reasons. We consider and reject their arguments.

### 1. Sections 2–4–202 and 2–4–303

¶ 27 The dissent relies in part on two statutes addressing the retroactive effect of amendatory legislation: section 2–4–202, C.R.S. 2014 ("A statute is presumed to be prospective in its operation."), and section 2–4–303, C.R.S. 2014 ("The repeal ... of any statute or part of a statute ... shall not have the effect to release [or] extinguish ... any penalty, forfeiture, or liability, either civil or criminal, which shall have been incurred under such statute, unless the repealing ... act so expressly provides...."). The People also make brief reference to section 2–4–303 only. For four reasons, these two statutes do not change our analysis.

¶ 28 First, as the dissent notes, the supreme court has expressly ruled that section 2–4–303 does not apply to criminal cases. *Noe v. Dolan*, 197 Colo. 32, 36 n. 3, 589 P.2d 483, 486 n. 3 (1979). The court explained that, in criminal cases, it "has consistently adhered to the principle enunciated" in *Thomas* "that a defendant is entitled to the benefits of amendatory legislation when relief is sought before finality has attached to the judgment of conviction." *Id.* "This result is dictated by the legislative intent evidenced by the postconviction review remedy authorized by section 18–1–410(1)(f) ...." *Id.* To the extent this language may constitute dic-

tum because *Noe* was a civil case, it has never been expressly overruled or disapproved by the supreme court.

¶ 29 Second, the proposition in *Riley v. People*, 828 P.2d 254 (Colo.1992), and *People v. McCoy*, 764 P.2d 1171 (Colo.1988), on which the dissent relies constitutes dicta. Those decisions included references to sections 2–4–202 and 2–4–303 in string cites, but without discussion or analysis. *Riley*, 828 P.2d at 257; *McCoy*, 764 P.2d at 1174. The statutes are cited in *McCoy* as support for the proposition that the supreme court's cases "establish that a defendant does not receive any ameliorative benefit *when retroactive application of the amendatory legislation is clearly not intended by its own terms*." 764 P.2d at 1174 (emphasis added). Thus, *McCoy* and *Riley*, and the cases they cite on this issue, all construe statutes with effective date clauses stating that the amendatory legislation either (1) applies only to offenses committed on or after the effective date, *see People v. Holland*, 708 P.2d 119, 120 (Colo.1985); *People v. Macias*, 631 P.2d 584, 586 (Colo.1981); *People v. Barefield*, 804 P.2d 1342, 1346 (Colo.App.1990); *People v. Collyer*, 736 P.2d 1267, 1269 (Colo.App.1987); or (2) does not apply to offenses committed prior to the effective date, *see People v. Stewart*, 626 P.2d 685, 686 (Colo.1981); *People v. Lopez*, 624 P.2d 1301, 1302 (Colo.1981); *Tacorante v. People*, 624 P.2d 1324, 1329 (Colo.1981) (explaining that the statute at issue in *Lopez* applied to offenses committed on or after July 1, 1979, and, "notwithstanding any other provision of law or court rule, shall not apply to offenses committed prior to said date"). The clarity of the "on-or-after" and similar language in *Riley*, *McCoy*, and the cited cases rendered any reliance on the two statutes unnecessary, since there can be no dispute that the plain amendatory statutory language in those cases unambiguously expressed an intention that there be no retroactive effect. Thus, to the extent that *Riley* and *McCoy* look to sections 2–4–202 and 2–4–303 to deny retroactive effect to the ameliorating criminal legislation in those cases, such reliance is dicta.[3]

---

**3.** The discussion of those statutory provisions in

*People v. McCoy*, 764 P.2d 1171 (Colo.1988), con-

¶ 30 We also note that neither *Riley* nor *McCoy* purported to overrule *Thomas* or any of the many decisions following it. In particular, *Riley* and *McCoy* did not suggest that *Bloom* or *Glazier* was improperly decided. Those decisions gave the defendants the benefit of 1975 legislation that ameliorated the penalties for marijuana possession. *Bloom,* 195 Colo. at 251–52, 577 P.2d at 292; *Glazier,* 193 Colo. at 269, 565 P.2d at 936. The amendatory legislation at issue in those cases merely stated: "This act shall take effect July 1, 1975." Ch. 115, sec. 10, § 12–22–412, 1975 Colo. Sess. Laws 437. The supreme court nonetheless extended the ameliorative benefits of the amendatory legislation to those defendants based on the rule in *Thomas,* which *Riley* and *McCoy* left intact. The language in section 16(9)—"shall become effective"—is similar to that in the 1975 marijuana legislation.

¶ 31 The third reason why we are not persuaded that sections 2–4–202 and 2–4–303 are controlling in this case is based on a principle of statutory construction that trumps those two sections. If a general provision conflicts with a more specific provision, and the conflict is irreconcilable, "the special . . . provision prevails as an exception to the general provision, unless the general provision is the later adoption *and* the manifest intent is that the general provision prevail." § 2–4–205, C.R.S. 2014 (emphasis added). Sections 2–4–202 and 2–4–303 (assuming they apply to criminal cases at all) set forth *general* rules of construction regarding prospective effect for amendatory legislation, while section 18–1–410(1)(f)(I) provides for retroactive application of amendatory legislation under specific circumstances—where "there has been significant change in the law, applied to the applicant's conviction or sentence, allowing in the interests of justice retroactive application of the changed legal standard."

¶ 32 Fourth, we have an obligation to adopt a construction of these statutes that

avoids or resolves conflicts, if possible. *See Huber,* 264 P.3d at 892. Section 2–4–202, which creates a general presumption of prospective effect, can be readily reconciled with section · 18–1–410(1)(f), which carves out a specific exception to the general presumption.

¶ 33 But even if the statutes cannot be reconciled, then section 18–1–410(1)(f) must prevail as the more specific provision. As the supreme court has explained, "[a] general provision, by definition, covers a larger area of the law. A specific provision, on the other hand, acts as an exception to that general provision, carving out a special niche from the general rules to accommodate a specific circumstance." *Martin v. People,* 27 P.3d 846, 852 (Colo.2001). The court also pointed out that by having the specific provision prevail over the general, both provisions can still exist; if the general provision prevailed, the specific one would cease to function. *Id.*

¶ 34 In this case, the version of section 18–1–410(1)(f) in effect on the effective date of Amendment 64 was enacted after sections 2–4–202 and 2–4–303. *Compare* Ch. 56, sec. 28, § 18–1–410(1)(f), 1975 Colo. Sess. Laws at 211, *with* Ch. 406, sec. 1, § 135–1–202, 1973 Colo. Sess. Laws at 1424, *and* Ch. 406, sec. 1, § 135–1–303, 1973 Colo. Sess. Laws at 1425. Even if section 18–1–410(1)(f) was not the more recent, neither section 2–4–202 nor section 2–4–303 expresses a manifest intent to repeal or displace section 18–1–410(1)(f). *See Jenkins v. Panama Canal Ry. Co.,* 208 P.3d 238, 242–42 (Colo.2009). Indeed, none of these statutes refers to the others.

¶ 35 We therefore conclude that sections 2–4–202 and 2–4–303 do not preclude the retroactive application of section 16(3) in this case.

### 2. The Constitutional Presumption

¶ 36 The People's principal contention is that retroactive application of section 16(3) is

---

sists of dicta for another reason. The supreme court there concluded that a special interrogatory returned by the jury rendered moot the question of which version of the substantive statute at issue applied, since the penalty for the offense would have been the same under both the old and new statutes. *Id.* at 1175. Thus, the entire

discussion regarding retroactivity was unnecessary and does not constitute binding precedent. *See Town of Eagle v. Scheibe,* 10 P.3d 648, 652 (Colo.2000) (stating that language in a supreme court decision that was not necessary to the decision was dicta and not controlling precedent).

not possible because a constitutional amendment applies prospectively unless the terms of the constitutional amendment clearly show the intent that it be applied retroactively. *See Huber*, 264 P.3d at 889. This argument fails for several reasons.

¶ 37 First, as just discussed, statutes are also presumed to be prospective in operation. §§ 2–4–202, –303. Notwithstanding that presumption, the supreme court has applied the *Thomas* rule and section 18–1–410(1)(f) to the numerous statutes described in the cases cited above, and the court has never abrogated that rule.

¶ 38 Second, as previously noted, section 16(3)(a) must be construed to give effect to all legislative acts, if possible, and resolve any potential conflicts, and awareness of such legislation and applicable judicial decisions must be assumed. *See Anderson*, 102 P.3d at 330. Thus, the presumption that section 16(3)(a) be given prospective effect only should be applied in light of the existing framework that gives defendants the benefit of significant changes in the law, so long as the changes are asserted before the judgment of conviction becomes final at the conclusion of the direct appeal.

¶ 39 Third, the cases relied on by the People for the presumption of the prospective effect of constitutional amendments are all, with one exception, civil cases, to which section 18–1–410(1)(f) and the *Thomas* rule do not apply. The only exception, *People v. Elliott*, 186 Colo. 65, 525 P.2d 457 (1974), was announced just two weeks after *Thomas*. The parties in *Elliott* obviously could not have argued *Thomas*, and the opinion does not cite to or discuss *Thomas*. *Elliott* was not cited in any of the cases listed above following *Thomas*, nor are we aware of any reported Colorado criminal case on this issue citing *Elliott*. None of the cases relied on by *Elliott* involved retroactive application of a constitutional amendment repealing a statute defining a crime or specifying a sentence. Unlike this case, *Elliott* did not involve a constitutional amendment aimed at repealing, or reducing the penalty, for a particular criminal offense; rather, it involved the

Equal Rights Amendment (article II, section 29 of the Colorado Constitution), which guarantees equality of all rights between the sexes. Thus, *Elliott* has little or no relevance to the present case.

¶ 40 Fourth, for the reasons articulated in Part III.C.1., we reject the People's contention that *Thomas* and *Bloom* are no longer good law because of the "clarification" regarding the presumption of prospectiveness provided in *Riley* and *McCoy*. The amendatory statutes at issue in those cases applied only to acts committed "on or after" their effective dates. Had the drafters of Amendment 64 intended to limit the effect of section 16(3)(a) to future conduct only, they could have included "on or after" language in the effective date clause. They chose not to do so, and we decline to extend *Riley* and *McCoy* beyond the facts on which they are based.

¶ 41 Finally, the dissent emphasizes section 1–40–123, C.R.S. 2014, which provides that a measure submitted to the people "shall take effect from and after the date of the official declaration of the vote by proclamation of the governor, but not later than thirty days after the votes have been canvassed." (The People's brief makes no reference to this statute.) However, we see no reason why this statute, or the general presumption articulated in *Huber*, preempts the *Thomas* rule or section 18–1–410(1)(f):

- Section 18–1–410(1)(f)(I) refers to a significant "change in the law" applicable to a criminal defendant's conviction or sentence resulting in a "changed legal standard."[4]
- Section 1–40–123 establishes a general rule concerning the prospective nature of constitutional amendments. *See also Huber*, 264 P.3d at 889 (stating presumption that a constitutional amendment has prospective application only).
- For the reasons discussed above, however, this general rule or presumption is subject to the more specific exception set forth in section 18–1–410(1)(f) and the *Thomas* rule providing for the retroactive application to a conviction or sen-

---

4. This plain language encompasses *all* changes in the law, not just amendments to statutes.

tence of a changed legal standard resulting from a significant change in the law.

- Nothing in section 16(9) expresses a manifest intent that it prevail over section 18–1–410(1)(f) or the *Thomas* rule.

¶ 42 Accordingly, the general presumption of prospective effect accorded constitutional amendments by *Huber* and section 1–40–123 is subject to the narrow exception created by *Thomas* and section 18–1–410(1)(f).

### 3. Other Contentions

¶ 43 The People also contend that the express language of section 16(3)(a) shows that the voters intended for the initiative to apply prospectively only. They argue that the use of the phrase "*shall* not be an offense" in section 16(3) indicates that the voters intended to decriminalize only future marijuana offenses. (Emphasis added.) We are not persuaded.

¶ 44 The term "shall" is normally used in statutes to indicate the General Assembly's intent for a provision to be mandatory. *See, e.g., Riley v. People,* 104 P.3d 218, 221 (Colo. 2004) ("There is a presumption that the word 'shall' when used in a statute is mandatory."); *DiMarco v. Dep't of Revenue,* 857 P.2d 1349, 1352 (Colo.App.1993). Thus, the mere use of the word "shall" sheds little light on whether Amendment 64 applies retroactively. We also note that the same sentence in section 16(3) containing the term "shall" includes the present tense statement that "the following acts [personal marijuana possession and use] *are* not unlawful" (emphasis added). While the amendment could have been drafted to include clearly prospective language in both phrases, for example using "on or after" language, it was not.

¶ 45 Finally, the People argue that the division in *Russell* erred in relying on *Bloom* and *Thomas* because of an asserted "fundamental distinction" between an enactment that repeals a substantive offense and one that mitigates the penalties for crimes. Such a distinction, however, is not made in section 18–1–410(1)(f)(I), which expressly contemplates applying a significant change in the law "to the applicant's *conviction or sentence*" (emphasis added). Maintaining the proposed distinction would also lead to unjust

and unreasonable results. For example, in *Glazier,* the defendant was given the benefit of a change in law that reduced his sentence for possessing a small amount of marijuana from five to eight years in the custody of the Department of Corrections to a $100 fine. 193 Colo. at 269, 565 P.2d at 936. Under the People's approach, however, if the General Assembly had decriminalized such possession entirely, the defendant would not have been entitled to the benefit of that change in the law. Maintaining such an inequitable distinction would be unjust and unreasonable. *See Huber,* 264 P.3d at 892.

¶ 46 Accordingly, we agree with the division's reasoning in *Russell* and apply it here. Defendant was found guilty on August 8, 2012, and sentenced and convicted on November 14, 2012. Thus, because her appeal remains pending, her conviction for possession of less than one ounce of marijuana must be vacated.

### IV. Correction of the Mittimus

¶ 47 The mittimus indicates that defendant was convicted of count six, for conspiracy to sell marijuana. Both parties agree, and the jury verdict form reflects, that the jury found defendant not guilty of this count and that the mittimus is therefore incorrect. We therefore remand the case to the trial court with directions to correct the mittimus.

### V. Conclusion

¶ 48 The judgment of conviction for attempted distribution of marijuana is affirmed. The judgment of conviction for possession of marijuana is reversed. We remand the case to the trial court with directions to vacate the marijuana possession conviction and to amend the mittimus to remove the possession and conspiracy convictions, as specified in Parts III and IV of this opinion.

JUDGE HAWTHORNE concurs.

JUDGE BERNARD concurs in part and dissents in part.

JUDGE BERNARD, concurring in part and dissenting in part.

¶ 49 I concur with the majority's decisions to affirm defendant's felony conviction for attempted distribution of marijuana and to correct the mittimus. I respectfully dissent from its decision to vacate her petty offense conviction for possessing marijuana.

## I. Introduction

¶ 50 I dissent on an issue that seems superficially easy enough: Should we apply the ameliorative change found in article XVIII, section 16(3) of the Colorado Constitution (section 16(3)), which eliminated criminal liability for possession of small amounts of marijuana, to defendant's petty offense conviction for possessing less than two ounces of marijuana?

¶ 51 After all, we can look to the amendment's effective date, which is found in article XVIII, section 16(9) of the Colorado Constitution (section 16(9)). It states that, "[u]nless otherwise provided by this section," all of section 16's provisions "shall become effective upon official declaration of the vote" by the Governor's proclamation.

¶ 52 Defendant committed the petty offense in October 2011; a jury convicted her in August 2012; the court sentenced her in November 2012; and the Governor issued the proclamation making all of section 16 effective in December 2012, 2013 Colo. Sess. Laws 3300. So it would seem almost automatic that we would conclude that section 16(3) does not apply to defendant's case.

¶ 53 But reaching such a conclusion is neither automatic nor easy. This is a tricky issue because it involves synthesizing

- supreme court decisions establishing the rules for determining whether we should apply constitutional amendments retroactively with
- supreme court decisions from the 1970s that analyzed the effect of statutes amending criminal sentences with
- subsequent supreme court decisions that appear to add a step to the analysis that did not exist in the 1970s.

¶ 54 I greatly respect the thoughtful heavy lifting that my colleagues in the majority have done to reach the conclusion that section 16(3) applies retroactively to defendant's case. But I must part company with them because I read the tea leaves differently. To begin to explain my differing view, I must return to the 1970s and the genesis of the vexing complexity that we encounter in this case.

## II. The Beginning

### A. The 1972 Revision of the Criminal Code

¶ 55 Effective July 1, 1972, the General Assembly completely revised Colorado's criminal code. Ch. 121, sec. 4, 1971 Colo. Sess. Laws 490; *People v. Vigil*, 127 P.3d 916, 931 (Colo.2006); *People v. Jefferson*, 748 P.2d 1223, 1228 (Colo.1988). These sweeping changes included a new sentencing scheme for felonies. Ch. 121, sec. 1, § 40-1-105, 1971 Colo. Sess. Laws 390; *People v. Herrera*, 183 Colo. 155, 159, 516 P.2d 626, 627 (1973). The new scheme reduced the length of sentences for most felonies. *Herrera*, 183 Colo. at 159, 516 P.2d at 627.

¶ 56 The new criminal code made two points about its applicability.

1. It applied to "any offense ... committed on or after July 1, 1972." Ch. 121, sec. 1, § 40-1-103(1), 1971 Colo. Sess. Laws 389.

2. It did not apply to "any offense committed prior to July, 1, 1972." § 40-1-103(2), 1971 Colo. Sess. Laws at 389. Those offenses were to be "tried and disposed of according to the provisions of law existing at the time" when they were committed "in the same manner as if this code had not been enacted." *Id.*

¶ 57 The new code also added the statute that eventually became section 18-1-410(1)(f), C.R.S. 2014. The original statute stated in 1971 that defendants, in postconviction motions, could ask courts to grant them relief if "there has been significant change in the law, applied to applicant's ... sentence, requiring in the interests of justice retroactive application of the changed legal stan-

dard." Ch. 121, sec. 1, § 40–1–510(1)(f), 1971 Colo. Sess. Laws 403.

## B. *People v. Herrera*

¶ 58 The first supreme court case to analyze section 40–1–510(1)(f), held that it was unconstitutional. *Herrera*, 183 Colo. at 161–63, 516 P.2d at 628–29. The basis for this holding was that "the legislature [had] sought to confer upon the courts the express power to review sentences after conviction and exhaustion of appellate remedies." *Id.* at 161, 516 P.2d at 628. By doing so, the legislature had attempted to vest the courts with the exclusive power of Colorado's Governor to commute sentences. *Id.* at 161–62, 516 P.2d at 628–29.

¶ 59 In reaching this result, the supreme court contrasted section 40–1–510(1)(f), with section 40–1–509. Ch. 121, sec. 1, § 40–1–509, 1971 Colo. Sess. Laws 401–02. This statute, which today is found in section 18–1–409, C.R.S. 2014, allowed courts to review sentences in the course of "the appeal process." *Herrera*, 183 Colo. at 162 n. 2, 516 P.2d at 628 n. 2.

¶ 60 The supreme court discussed *Herrera*'s holding in several cases decided in the first half of 1974. For example, in *People v. Arellano*, 185 Colo. 280, 282–83, 524 P.2d 305, 306 (1974), it explained the "constitutional rule" that *Herrera* had announced. It was "that after conviction and exhaustion of appellate remedies, relief from a sentence validly imposed may not be obtained through the judiciary, but rather the remedy therefor lies in the executive department by way of commutation." *Id.*

## C. Changes in 1973 and 1974

¶ 61 But four things happened in 1973 and 1974 that relegated *Herrera* to the analytical sidelines for the purposes of this case. First, in 1973, the legislature amended section 40–1–103(2) by adding the phrase, "[e]xcept as otherwise provided by section 40–1–510" at the beginning of the subsection. Ch. 152, sec. 1, § 40–1–103(2), 1973 Colo. Sess. Laws 533.

¶ 62. Second, in mid–1974, the supreme court decided *People v. Thomas*, 185 Colo. 395, 525 P.2d 1136 (1974). *Thomas* distinguished *Herrera*, noting that the defendant in *Thomas* had "filed his [section 40–1–510(1)(f) ] motion before his conviction had become final[,]" so the trial court had "jurisdiction to entertain" the motion. *Id.* at 397, 525 P.2d at 1137.

¶ 63 The supreme court then concluded that (1) the legislature's 1973 amendment of section 40–1–103(2) had made clear that the changes in sentencing wrought by the new criminal code should "apply wherever constitutionally permissible[,]" *id.* at 397, 525 P.2d at 1137; (2) section 40–1–510(1)(f) "expressly provides for the application of [these] legal standards[,]" which was "especially appropriate where a change in the law reducing the sentence intervenes before conviction is had and sentence is imposed[,]" *id.* at 397–98, 525 P.2d at 1138; and (3) "[t]he view that amendatory legislation mitigating the penalties for crimes should be applied to any case which has not received final judgment finds substantial support in the common law[,]" *id.* at 398, 525 P.2d at 1138.

¶ 64 Third, in late 1974, the supreme court decided *People v. Carter*, 186 Colo. 391, 527 P.2d 875 (1974). As is relevant to this appeal, *Carter* addressed the contention that section 40–1–509 was unconstitutional for the same reason that *Herrera* had concluded that section 40–1–510(1)(f) was unconstitutional: it invaded the Governor's prerogative to grant commutations. But the court rejected that comparison, holding that "the appellate review of sentences by this [c]ourt, before finality of conviction, as allowed by section 40–1–509, is a proper judicial function...." *Id.* at 395, 527 P.2d at 877. The court added that "for the purposes of reviewing and granting relief from sentences validly imposed the judgment and sentence is not final until after appellate remedies for review have been exhausted." *Id.*

¶ 65 Fourth, at the end of 1974, the supreme court decided *People v. Thornton*, 187 Colo. 202, 529 P.2d 628 (1974). The defendant in that case appealed his sentence under section 40–1–509. He asserted that his sentence was "unduly harsh and excessive" in light of a 1973 legislative amendment. *Id.* at 203, 529 P.2d at 628. The amendment pro-

vided for indeterminate sentencing for the kind of felony that the defendant had committed. Ch. 145, sec. 2, § 39–11–304(2)(a), 1973 Colo. Sess. Laws at 504.

¶ 66 The supreme court decided to apply *Thomas* to the defendant's appeal, and it held that the defendant was "entitled to the benefits of the indeterminate sentencing provisions" of the 1973 amendments. *Thornton,* 187 Colo. at 203, 529 P.2d at 629. And the court concluded that, although the "procedure followed in" *Thomas* arose out of section 40–1–510(1)(f), "there was no valid reason not to grant similar relief under the *Thomas* rule, where, as here, the application for relief is sought by direct appeal under section 40–1–509." *Id.* at 203, 529 P.2d at 628; *accord People v. Race,* 187 Colo. 204, 205, 529 P.2d 629, 630 (1974)(the defendant could seek the benefits of amendatory legislation in an appeal filed under section 40–1–509).

### D. The Rest of the 1970s

¶ 67 *Thomas* held sway for the rest of the decade. In a series of cases, the supreme court concluded that defendants were entitled to new, reduced sentences that were authorized by amendatory legislation. *E.g., People v. Bloom,* 195 Colo. 246, 251–52, 577 P.2d 288, 292 (1978); *Glazier v. People,* 193 Colo. 268, 269, 565 P.2d 935, 936 (1977); *People v. Truesdale,* 190 Colo. 286, 290, 546 P.2d 494, 497 (1976); *People v. Griswold,* 190 Colo. 136, 137–38, 543 P.2d 1251, 1252–53 (1975); *Shook v. Dist. Court,* 188 Colo. 76, 78, 533 P.2d 41, 42 (1975); *McClure v. District Court of Fourth Judicial Dist.,* 187 Colo. 359, 361, 532 P.2d 340, 342 (1975); *Naranjo v. Dist. Court,* 189 Colo. 21, 23, 536 P.2d 36, 37 (1975).

¶ 68 Divisions of this court reached the same conclusion. *People v. Palmer,* 42 Colo. App. 460, 461–62, 595 P.2d 1060, 1062 (1979); *People v. Jenkins,* 40 Colo.App. 140, 143, 575 P.2d 13, 15–16 (1977).

¶ 69 The supreme court also cited *Thomas* in the mid–1980s. *People v. Montgomery,* 737 P.2d 413, 414 n.4 (Colo.1987)(recognizing, in dicta, that the prosecution and the defense had reached a stipulation based on *Thomas* ); *People v. Emig,* 676 P.2d 1156, 1158 n. 7

(Colo.1984)(noting, in dicta, that the trial court had applied *Thomas* to the defendant's sentence).

### III. The Approach Changes

¶ 70 If it had not done so before, the legislature, in the late 1970s, began to add language to criminal statutes that stated that they only applied "to offenses committed on or after" a particular date. The supreme court held, as a result, that defendants were not entitled to the benefits of sentencing amendments when statutes included such language. *See, e.g., People v. Macias,* 631 P.2d 584, 586–87 (Colo.1981); *People v. Stewart,* 626 P.2d 685, 686 (Colo.1981); *People v. Lopez,* 624 P.2d 1301, 1302 (Colo.1981); *Tacorante v. People,* 624 P.2d 1324, 1329 n. 14 (Colo.1981); *People v. Steelman,* 200 Colo. 177, 179, 613 P.2d 334, 335 (1980); *People v. McKenna,* 199 Colo. 452, 456–57, 611 P.2d 574, 576–77 (1980).

¶ 71 Divisions of this court reached the same result. *People v. Pineda–Eriza,* 49 P.3d 329, 333 (Colo.App.2001); *People v. Kemp,* 885 P.2d 260, 264–65 (Colo.App.1994); *People v. Collyer,* 736 P.2d 1267, 1268–69 (Colo.App.1987).

¶ 72 The supreme court explained the rationale for the cases that held that defendants were not entitled to the benefits of amendatory legislation in *People v. McCoy,* 764 P.2d 1171 (Colo.1988). The court observed that its jurisprudence had set out two rules.

¶ 73 First, "a defendant should receive the benefit of amendatory legislation mitigating the penalties for crimes committed prior to the new legislation when the amendatory legislation *expressly* provides for retroactive application." *Id.* at 1174 (emphasis added). It cited *Thomas, Thornton,* and *Naranjo* as authority for this first rule. *Id.*

¶ 74 Second, "a defendant does not receive any ameliorative benefit when retroactive application ... is clearly not intended by its own terms." *Id.* It cited *Lopez, Stewart, Macias,* and *Collyer* as authority for this second rule. *Id.*

¶ 75 Then, because the amendatory legislation stated that it applied "on or after" a particular date, the court held that the defendant would not receive the benefit of the statutory change. *Id.* at 1174–75. The court added that, " '[w]hen the language of a statute is clear, we must give the statute effect as written.' " *Id.* at 1174 (quoting *Macias*, 631 P.2d at 587).

¶ 76 The supreme court reiterated that it would apply these two rules to amendatory legislation arguments in *Riley v. People*, 828 P.2d 254 (Colo.1992). The first rule flowed from *Thomas* : The defendant in that case was "entitled to the benefits of the new legislation that became effective prior to his initial sentencing, noting that such conclusion was consistent with legislative intent." *Id.* at 258.

¶ 77 The second rule flowed from decisions that the court made after *Thomas* : "In *subsequent* cases we have *emphasized* that a defendant is not entitled to the ameliorative effects of amendatory legislation if the General Assembly has not *clearly* indicated its intent to require such retroactive application." *Id.* (emphasis added). The court cited *McCoy* and *Macias* as support for this second rule.

¶ 78 *Riley* involved two statutes that required the court to employ both rules. It applied the first rule to a statute that reduced sentences for certain sentences in the presumptive range for "persons who committed certain carefully delineated relatively minor offenses." *Id.* This statute "express[ed] a legislative determination" that it should have a "limited retroactive effect." *Id.* It expressed this "determination" by stating that its amendatory effect would apply "if the felony was committed after July 1, 1985, and the person was sentenced before July 1, 1988, and said conviction is not yet final." *Id.* at 256 (citing Ch. 124, sec. 14, § 18–1–105(1)(b)(VII), 1988 Colo. Sess. Laws 712).

¶ 79 But the defendant in *Riley* "was subject to sentencing in the aggravated range." *Id.* at 259. And the effective date clause for the statute amending those sentences contained "on or after" language. *Id.* at 257. So the court applied the second rule to reject the defendant's contention that he was enti-

tled to the benefit of the statutory amendment to presumptive range sentences. The court added that "[a]doption of the defendant's argument would require this court to ignore the clear legislative determination that the ... amendments were intended in general to have prospective effect only." *Id.*

## IV. The Elephant in the Room

¶ 80 *Thomas* did not mention present-day sections 2–4–202 and 2–4–303, C.R.S. 2014, which were then on the books.

¶ 81 Section 2–4–202 was the same in 1974 as it is today. It stated that "[a] statute is presumed to be prospective in its operation."

¶ 82 Section 2–4–303 stated in 1974, as it does today, that

- "[t]he repeal, revision, amendment, or consolidation of any statute ... or section ...";
- "shall not have the effect to release, extinguish, alter, modify, or change in whole or in part any penalty ... either civil or criminal";
- "*unless* the repealing, revising, amending, or consolidating act so *expressly* provides" (emphasis added); and
- "such statute ... or section ... shall be treated and held as still remaining in force";
- "for the purpose of sustaining any and all ... prosecutions, criminal as well as civil, for the enforcement of such penalty ... [or] for the purpose of sustaining any judgment ... or order which can or may be rendered, entered, or made in such ... prosecutions imposing, inflicting, or declaring such penalty...."

¶ 83 These two statutes did not appear in any of *Thomas*'s progeny until 1979. *Noe v. Dolan*, 197 Colo. 32, 589 P.2d 483 (1979), was a civil case. The Department of Revenue revoked the plaintiff's driving privileges under the implied consent law. The plaintiff, citing *Thomas*, asserted that he was entitled to the benefit of a statutory amendment to that law. The supreme court disagreed.

¶ 84 In reaching its conclusion, the supreme court distinguished criminal and civil cases. It held that *Thomas* did not apply to

civil cases; rather, section 2–4–303 applied. *Id.* at 34–36, 589 P.2d at 485–86. And the application of section 2–4–303 to the plaintiff's assertion meant that the legislature's amendment did not apply to him. *Id.*

¶ 85 But the court added that section 2–4–303 did not apply to criminal cases. Instead, section 18–1–410(1)(f) applied. If "a criminal penalty is at issue, [the supreme court] has consistently adhered to the principle enunciated in [*Thomas*] that a defendant is entitled to the benefits of amendatory legislation when relief is sought before finality has attached to the judgment of conviction." *Id.* at 36 n. 3, 589 P.2d at 486 n. 3.

¶ 86 If the discussion of *Thomas* in *Noe* was the supreme court's holding—and I think that it is dicta—it would seem to close the door on any debate whether section 2–4–303 applies to criminal cases in which defendants seek the benefits of amendatory legislation. But, even so, the supreme court *reopened* the door, at least by a crack, almost ten years later in *McCoy*. It cited sections 2–4–202 and 2–4–303 as authority for the second interpretive rule, which was that "a defendant does not receive any ameliorative benefit when retroactive application . . . is clearly not intended by its own terms." *McCoy*, 764 P.2d at 1174. And, to make matters less clear, *McCoy* does not analyze or even cite *Noe*.

## V. The Constitutional Amendment Wrinkle

¶ 87 But we are not dealing with a statute here; we are dealing with an initiative that amended Colorado's Constitution. I have not found any Colorado Supreme Court case that directly addresses whether defendants are entitled to the benefits of constitutional amendments of sentences in criminal cases. (*People v. Russell*, 2014 COA 21M, ¶¶ 9–20, 396 P.3d 71 (*cert. granted* Feb. 23, 2014), of course, reaches such a result, but it was issued by a division of this court.)

¶ 88 But the supreme court cases that ask the question whether constitutional amendments should apply retroactively provide a uniform answer. We must presume that a constitutional amendment applies prospectively unless its terms make clear that it should be applied retroactively. *Huber v.*

*Colo. Mining Ass'n*, 264 P.3d 884, 890 (Colo. 2011); *Jackson v. State*, 966 P.2d 1046, 1052 (Colo.1998); *In re Great Outdoors Colo. Trust Fund*, 913 P.2d 533, 539 (Colo.1996); *Bolt v. Arapahoe Cnty. Sch. Dist. No. Six*, 898 P.2d 525, 533 (Colo.1995); *People v. Elliott*, 186 Colo. 65, 68, 525 P.2d 457, 458 (1974). And, "[w]hen courts construe a constitutional amendment that has been adopted through a ballot initiative, any intent of the proponents that is not adequately expressed *in the language of the measure* will not govern the court's construction of the amendment." *Great Outdoors Colo. Trust Fund*, 913 P.2d at 540 (emphasis added).

¶ 89 These cases contain at least one example of what such clear language should look like. *Bolt* analyzed article X, section 20(4) of the Colorado Constitution, which is part of the Taxpayers Bill of Rights. That section required advance voter approval of various new or increased taxes "[s]tarting November 4, 1992." But the Governor did not issue a proclamation declaring that the Taxpayers Bill of Rights, which had passed in the November 1992 general election, had been approved until January 1993. The November 1992 date nevertheless controlled because it was a specific statement of the voters' intent that section 20(4)(a) should apply retroactively. *Bolt*, 898 P.2d at 533–34.

## VI. My Analysis

¶ 90 Based on this extended survey of the history of this issue, I reach five conclusions.

¶ 91 First, we should not address defendant's contention that section 16(3) wipes out her conviction and sentence for the drug petty offense of possession of less than two ounces of marijuana. *See* § 18–18–406(5)(a)(I), C.R.S. 2014 (classifying the act of possessing less than two ounces of marijuana as a drug petty offense). Defendant did not file a motion in the trial court seeking relief under section 18–1–410(1)(f). Rather, she raised this argument for the first time in this appeal.

¶ 92 Applying *Thornton* and *Race*, I would therefore conclude that there is a "valid reason" to assume that defendant has asked us to apply *Thomas* in the context of an appeal

filed under section 18–1409. § 18–1–410(1)(f); *see Race,* 187 Colo. at 205, 529 P.2d at 630; *Thornton,* 187 Colo. at 203, 529 P.2d at 628; *cf. Carter,* 186 Colo. at 395, 527 P.2d at 877("[T]he appellate review of sentences by this [c]ourt, before finality of judgment of conviction, as allowed by section 40–1–509, is a proper judicial function....").

¶ 93 By its express terms, section 18–1–409 specifically limits appeals to felony sentences. *People v. DeJesus,* 184 Colo. 230, 233, 519 P.2d 944, 945 (1974); *People v. Roberts,* 668 P.2d 977, 979 (Colo.App.1983). Indeed, section 18–1–409(1) states that "[w]hen sentence is imposed upon any person following a conviction of any *felony* ... the person convicted shall have the right to one appellate review of the propriety of the sentence...." (Emphasis added.) The language of the statute makes clear to me that defendant cannot appeal her sentence for a petty offense under this statute.

¶ 94 Second, and alternatively, I would not follow *Russell* because, for the reasons that I describe below, I respectfully disagree with its reasoning. *See People v. Wolfe,* 213 P.3d 1035, 1036 (Colo.App.2009) (one division of the court of appeals is not bound by the decision of another division).

¶ 95 Third, I think that the distinction between statutes and constitutional amendments is a meaningful one. For example, section 1–40–123, C.R.S. 2014, makes clear that initiatives approved by the voters "shall take effect *from and after* the date of the official declaration of the vote by proclamation of the governor, but not later than thirty days after the votes have been canvassed...." (Emphasis added.) And, as far as I can tell, the supreme court has never applied *Thomas* or *Thomas*-like reasoning to a constitutional amendment.

¶ 96 *Elliott* is intriguing in this regard because it was a criminal case. It discussed the issue whether Colorado's Equal Rights Amendment applied retroactively to a criminal felony non-support case. The supreme court issued its opinion two weeks after *Thomas,* and it was written by one of the justices who dissented in that case. But the opinion does not mention *Thomas,* and the question before the court did not involve a potentially ameliorative change in the defendant's sentence.

¶ 97 I nonetheless conclude that, in the absence of any supreme court case suggesting otherwise, I am compelled to apply *Huber, Jackson, Great Outdoors Colo. Trust Fund, Bolt,* and *Elliott* to this issue without a *Thomas* gloss. Doing so, I presume that section 16(3) only applies prospectively. I would then conclude that we should not apply section 16(3) retroactively because there is no language in either section 16(3) or section 16(9) that clearly expresses the voters' desire that section 16(3) should apply retroactively.

¶ 98 Instead, the effective date clause in section 16(9) states that "[u]nless otherwise provided by this section," all of the amendment's provisions "shall become effective upon official declaration of the vote" on the amendment "by proclamation of the Governor." This means that, as far as this case is concerned, section 16(3) does not apply to defendant's case because

- section 16(3) does not "provide" a different effective date than section 16(9);
- section 16(9) does not contain clear language indicating retroactive application, akin to the language in *Bolt*;
- section 16(3) became effective on December 2012, when the Governor issued his proclamation;
- defendant committed the crimes in this case in October 2011; a jury convicted her in August 2012; and the court sentenced her in November 2012; and
- section 1–40–123 makes clear that the initiative *only* became effective "from and after" the date when the Governor issued his proclamation.

¶ 99 Fourth, even if I thought it appropriate to apply a *Thomas* gloss to a constitutional amendment, I nevertheless believe that our supreme court's jurisprudence has evolved in the years since it decided *Thomas.* Starting with cases such as *Macias,* the court has recognized two rules, rather than just the one described in *Thomas.* And the second rule makes clear that "a defendant does not receive any ameliorative benefit when retroactive application ... is clearly not intended by its own terms," *McCoy,* 764 P.2d

at 1174; or, to put it somewhat differently, that, since *Thomas*, the supreme court has "*emphasized* that a defendant is not entitled to the ameliorative effects of amendatory legislation if the General Assembly has not *clearly* indicated its intent to require such retroactive application," *Riley*, 828 P.2d at 258 (emphasis added).

¶ 100 Applying *Macias, McCoy*, and *Riley*, I would follow the supreme court's second rule in this case. (I do not think that either *Montgomery*, 737 P.2d at 414 n. 4, or *Emig*, 676 P.2d at 1158 n. 7, suggests a different result. Both those decisions simply recognized, in dicta, that there had been either a stipulation or a trial court order based on *Thomas*. And the supreme court did not have any reason to address the continued viability of *Thomas*'s single rule approach, or the propriety of the second rule, in either opinion.)

¶ 101 I would therefore conclude that the legal landscape has changed significantly since the 1970s, when the single rule in *Thomas* circumscribed the entire analysis. And I conclude that defendant is not entitled to the ameliorative effects of section 16(3), because the effective date clause, section 16(9), does not clearly, by its own terms, state the intention to apply any of section 16 retroactively, let alone section 16(3). *See Riley*, 828 P.2d at 258; *McCoy*, 764 P.2d at 1174.

¶ 102 I readily concede that the effective date clause in section 16(9) does not contain "on or after" language. But, at least to me, its language does not even remotely state in a clear and affirmative way, let alone suggest, that section 16(3) applies retroactively. It certainly does not contain the type of clear statement that the supreme court analyzed in *Riley*. *See Riley*, 828 P.2d at 256. And, although "on or after" clauses may have triggered the creation of the second rule, the supreme court has never stated that the second rule can *only* be applied when effective date clauses contain "on or after" language.

¶ 103 Fifth, to address the elephant in the room, if *McCoy* means that section 2–4–303 applies to this case, then I respectfully submit that my position becomes nearly airtight.

Combining the presumption of prospective effect found in section 2–4–202 with the definitive language in section 2–4–303 that requires "express[ ]" language to "release, extinguish, alter, modify, or change ... any [criminal] penalty," it is clear to me that section 16(9) does not contain such language.

¶ 104 I understand that *Noe* is still good law, but so is *McCoy*. And *McCoy* has the virtue of being a criminal case, like this one, while the statement in *Noe*, a civil case, appears to me to be dicta.