## No. 27698

**The People of the State of Colorado v. Michael Paul Bloom**

(577 P.2d 288)

Decided April 17, 1978.                    Rehearing denied May 8, 1978.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, William Rapson, Former Chief Appellate Deputy, Brooke Wunnicke, Chief Appellate Deputy, Peter R. Bornstein, Special Prosecutor, for plaintiff-appellee.

Davies and Saint-Veltri, Robert S. Berger, for defendant-appellant.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Defendant-Appellant Michael Paul Bloom, in a trial to the court, was convicted of the sale of marijuana (C.R.S. 1963, 48-5-2),[1] possession of marijuana (C.R.S. 1963, 48-5-2),[2] and conspiracy to sell and possess marijuana (C.R.S. 1963, 48-5-20(1)(i)).[3] The defendant was sentenced to five to twelve years on each of the sale and possession counts and to an indeterminate to five-year sentence on the conspiracy count, all sentences to run concurrently. We affirm the convictions.

The charges arose out of the sale of approximately fifty pounds of marijuana to undercover officers of the Metropolitan Enforcement Group (MEG). Defendant was also charged with the sale of marijuana "with intent to induce or aid another to unlawfully use of possess narcotic drugs" ("hard" sale under C.R.S. 1963, 48-5-20(1)).[4] The trial court dismissed this charge and found the defendant guilty of the lesser-included offense of simple or "soft" sale.

The defendant urges a number of grounds for reversal of his convictions. We consider them in order.

## I.

Defendant first contends that possession of marijuana is a lesser-included offense of simple or "soft" sale of marijuana, thus precluding a conviction of both offenses. He argues that under the doctrine of merger a criminal offense and all its lesser-included offenses merge into one offense, and that separate convictions for an offense and a lesser-included offense are therefore barred by the Double Jeopardy Clause. *U.S. Const.* amends. V and XIV; *Colo. Const.* Art. II, Sec. 18; *People v. Brown,* 185 Colo. 272, 523 P.2d 986.

In *People v. Holcomb,* 187 Colo. 371, 532 P.2d 45, this court held that possession of a narcotic drug is not a lesser-included offense of *"hard" sale* of a narcotic drug, and that possession of a dangerous drug is not a lesser-included offense of sale of a dangerous drug. We noted that the offenses are separate and distinct and proscribe different kinds of conduct. It naturally follows that possession of a narcotic drug is not a lesser-included offense of *"soft" sale* of a narcotic drug. The basic rationale is that possession and sale are directed at different sorts of criminal conduct

---

[1] Now section 12-22-404(1)(a), C.R.S. 1973.
[2] Now section 12-22-404(1) (*1*), C.R.S. 1973 (1976 Supp.).
[3] Now punished under section 18-2-201, C.R.S. 1973 (1976 Supp.).
[4] We note that under the amended statutes there is no distinction between a "soft" and "hard" sale of marijuana. *See* section 12-22-404(1), C.R.S. 1973 (1976 Supp.).

which may be independently punished. *Cf. People v. Brown, supra* (possession of narcotic drugs is a lesser-included offense of possession of narcotic drugs for sale). Therefore, the prohibition against double jeopardy is not violated by a conviction for both possession and simple or "soft" sale of marijuana.

## II.

Defendant's next argument is that under the "concerted action" or "Wharton" rule his conviction for conspiracy to possess and sell marijuana (C.R.S. 1963, 48-5-20(1)(i)) must be reversed. The classic formulation of the "Wharton" rule is as follows:

"An agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission." 1 *Anderson, Wharton's Criminal Law and Procedure* §89.

The "Wharton" rule was first adopted in Colorado in the case of *People v. Wettengel,* 98 Colo. 193, 58 P.2d 279. It has traditionally been applied to such crimes as dueling, bigamy, adultery, incest, gambling, giving and receiving bribes, and buying and selling contraband. The underlying rationale is that: "[T]he legislature took into account the dangers of the combination in setting the penalties for the substantive offense." *W. Lafave & A. Scott, Criminal Law* §62

■ There are a number of exceptions to the "Wharton" rule. One exception is that: "[A] conspiracy charge may be filed if the substantive crime is one that can be committed by one person, even if the crime, in most instances, is committed by more than one person." *People v. Incerto,* 180 Colo. 366, 505 P.2d 1309. Normally, of course, it requires both a seller and a buyer to consummate a sale of marijuana. However, in C.R.S. 1963, 48-5-1(10), "sale" is defined as: "barter, exchange, or gift, *or offer therefor . . . .''* (Emphasis added.)[5] Since the crime of sale can be committed by only one person who makes an offer to sell, the crime falls within the exception to the "Wharton" rule. This holding is in accord with *People v. Incerto, supra,* where we held that, since one person could commit the crime of bribery by making an offer to bribe, the "Wharton" rule would not prohibit an additional conviction for conspiracy to bribe.

■ Another exception to the "Wharton" rule permits conviction on both conspiracy and the substantive crime "when more or different people participate in the conspiracy than are necessary to commit the substantive offense." *People v. Incerto, supra.* The information in this case alleged a conspiracy of the defendant with three other persons. Only two persons are necessary to consummate a sale of marijuana. Since the number of conspirators exceeds the number of essential participants in the underlying

---

[5] Now section 12-22-301(25), C.R.S. 1973.

crimes, this case also fits within the second exception to the "Wharton" rule. Thus, the defendant's conspiracy conviction will not be reversed.

## III.

On January 13, 1975, the trial court granted a defense discovery motion for copies of "logs kept by MEG agents in connection with their investigation of the above-captioned matter." During the direct examination of agent Kraus at trial, it was discovered that MEG reports existed which dealt with the MEG investigation prior to the defendant's arrest. These reports were in MEG's, but not in the Prosecutor's, files. The trial court foreclosed further prosecution inquiry into this area of the investigation until the reports were made available to the defense. Later that day, defense counsel received copies of the reports.

Twelve days later, agent Kraus was again called to the stand for direct examination. Defense counsel objected to any questioning in this area of the investigation, but the objection was overruled. Although no mistrial was requested at the time, the defendant now contends that the district attorney's noncompliance with the discovery order requires that we reverse his convictions.

Crim. P. 16 (I) (d)(1) requires the prosecuting attorney to use "diligent good faith efforts" to make available to the defense on request discoverable material "which is in the possession or control of other governmental personnel." In order to facilitate this discovery, Crim. P. 16 (I)(b)(3) also requires that the district attorney: "ensure that a flow of information is maintained between the various investigative personnel and his office sufficient to place within his possession or control all material and information relevant to the accused and the offense charged." If the discovery rules or a court order issued pursuant thereto are not complied with, then the trial court is given discretion to order a wide range of remedies. Crim. P. 16 (III)(g).

It is undisputed that the defendant made a specific request for the MEG investigative reports and that he was entitled to discovery of them. The precise issue is whether the trial court abused its discretion in ordering the remedy for the situation that it did.

■ In our view, the trial court tailored a fair and appropriate remedy for the failure to fully comply with the ordered pretrial discovery. The court immediately precluded further questioning on the subject matter in the reports until they were made available to the defense. The defense was given twelve days to examine the reports before questioning was resumed in this area. The defense had ample opportunity to prepare for a cross-examination to probe any misstatements or inconsistencies and failure to

fully comply with the pretrial discovery was adequately remedied during the trial.[6]

ı nere are also constitutional parameters to discovery. In the landmark case of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, the United States Supreme Court delineated the duty of the prosecution, in certain circumstances, to make available exculpatory or impeaching statements that are material to the defense case and not otherwise available. The prosecution's failure to do so is a denial of due process. In the present case, however, the defendant has made no showing that the pre-arrest investigative reports were exculpatory or impeaching. Even more importantly, the defendant has not demonstrated prejudice by the delay in delivery of the reports. Without such prejudice, the defendant is not entitled under *Brady* to a reversal of his convictions.

### IV.

■ The defendant next contends that the classification of marijuana as a narcotic drug is a violation of due process under the Fourteenth Amendment to the United States Constitution. We have specifically considered and rejected this argument in a number of cases. *People v. Bourg,* 191 Colo. 309, 552 P.2d 504; *People v. Steed,* 189 Colo. 212, 540 P.2d 323; *People v. Summit,* 183 Colo. 421, 517 P.2d 850. They are dispositive of the issue here.

### V.

The defendant also argues that he is entitled to the ameliorative benefits of a July 1975 amendment to the criminal laws that removed marijuana from the list of *narcotic* drugs and reclassified it as a *dangerous* drug. *See* section 12-22-403(4), C.R.S. 1973 (1976 Supp.) and section 12-22-301, *et seq.,* C.R.S. 1973 (1976 Supp.). The 1963 statute under which the defendant was convicted provides that the offenses of possession of marijuana and sale of marijuana can each be punished by imprisonment for terms of two to fifteen years. C.R.S. 1963, 48-5-20(2)(b). The 1975 amendments revised the penalty for the offense of sale to one to fourteen years in prison. Section 12-22-412(1), C.R.S. 1973 (1976 Supp.). The offense of possession was reduced from a felony to a misdemeanor, and authorizes a maximum sentence of one year. Section 12-22-404(1)(*1*),C.R.S. 1973 (1976 Supp.) and section 12-22-412(6)(a), C.R.S. 1973.

■ In our decision in *People v. Thomas,* 185 Colo. 395, 525 P.2d 1136, we held that a defendant is entitled, whenever constitutionally permissible, to the benefits of amendatory legislation which mitigates the penalty for a crime. This rule applies to any case before final judgment. Thus, since the penalties have been lessened for both possession and sale of

---

[6] We do not assign fault for the noncompliance with the discovery order. We are convinced that the prosecuting attorney in good faith gave discovery of all materials of which he was aware. Nonetheless, we stress that the district attorney must make diligent efforts to find requested documents of which he is not aware and must ensure that a flow of information is maintained between his office and his investigating agencies.

marijuana, under the facts of this case the defendant is entitled to the benefits of these changes.

We note that the change in criminal penalty for sale was called to the trial court's attention prior to sentencing. The court then sentenced the defendant to a five to twelve-year sentence for sale, which was within the authorized range of imprisonment under the 1975 amendment. The defendant was then given a concurrent sentence of five to twelve years on the possession count. The amended statute authorized only a maximum of one year for possession. Even though the sentence imposed was concurrent with that imposed for the count of sale, the excessive sentence on the possession count should be corrected on remand.

## VI.

Agent Kraus, a Littleton police officer, was a member of MEG. He made the arrest of defendant in the City and County of Denver. Three other officers were present at the arrest: one other MEG officer and two Denver police officers. The defendant contests the validity of the arrest, arguing that MEG officers do not have the authority to make arrests in the City and County of Denver.[7] We find no merit to this position.

All Colorado police officers have the power to make arrests when a crime has been or is being committed in their presence. Section 16-3-102(1)(b), C.R.S. 1973. This power is not customarily exercised beyond the territorial boundaries of the officers' municipal jurisdiction, except in cases of fresh pursuit (section 16-3-106, C.R.S. 1973) or when called upon by another officer for assistance (section 16-3-202, C.R.S. 1973).

Nonetheless, we conclude that a police officer acting as an MEG agent, in whose presence a crime is being or has been committed, has the power to arrest the person committing the crime, as would any private citizen. Section 16-3-201, C.R.S. 1973. If private citizens have the power to arrest persons who commit crimes in their presence, certainly a police officer, outside his territorial jurisdiction, has the same power. From our examination of the various arrest statutes, we can find no legislative intent to deny the power of arrest to a police officer who is acting beyond the limits of his territorial authority while participating as a member of a multi-county or state-wide law enforcement task force when a crime is being or has been committed in his presence. *See* parts 1 and 2 of Article 3 of Title 16, C.R.S. 1973.

---

[7] The Metropolitan Enforcement Group is a group formed by a written agreement of metropolitan chiefs of police to combat the drug problem in Denver. It is funded by state (10%) and Law Enforcement Assistance Administration (90%) moneys. Although the trial court received detailed testimony on the legal status of MEG, we find this question to be irrelevant to the authority of undercover officer Kraus to arrest a person who commits a crime in his presence.

## VII.

The People cross-appeal for clarification of under what circumstances a person can be convicted under the "hard" sale narcotics statute (section 12-22-322(1), C.R.S. 1973). In the present case, the trial court dismissed the "hard" sale charge for the reason that the MEG officers initiated the sale on which the charge was based. This issue is fully covered in the case of *Mundt v. People,* 195 Colo. 145, 576, P.2d 165.

The judgments of conviction are affirmed and the cause is remanded to the district court to resentence defendant on the conviction of possession of marijuana.