2014 COA 21M

**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Brandi Jessica RUSSELL,**
**Defendant–Appellant.**

**Court of Appeals No. 11CA1929**

Colorado Court of Appeals,
Div. I.

Announced March 13, 2014

As Modified on Denial of Rehearing
May 8, 2014

John W. Suthers, Attorney General, Ethan E. Zweig, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Emeson Law, LLC, Brian S. Emeson, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE MILLER

¶ 1 Defendant, Brandi Jessica Russell, appeals the judgment of conviction entered upon a jury verdict for possession of methamphetamine, possession of marijuana concentrate, and possession of less than an ounce of marijuana. We affirm in part, reverse in part, and remand with directions.

¶ 2 In Part II, we hold, as a matter of first impression, that Colorado Constitution article XVIII, section 16 (popularly known as Amendment 64), which decriminalized pos-

session of one ounce or less of marijuana for personal use, applies retroactively to defendants whose convictions under those provisions were subject to appeal or postconviction motion on the effective date of the amendment. We also conclude, in Part III, that the trial court did not err in allowing a police officer to testify, based on his own experience, regarding the physical effects of methamphetamine and therefore uphold defendant's conviction on the methamphetamine charge.

## I. Background

¶3 In March 2010, defendant and her husband (father) brought their infant son to the hospital in Granby. Father reported that, while lying in bed, he rolled over onto the infant's leg, "heard a pop," and the infant began to cry. A doctor ordered an x-ray of the infant's leg which revealed that the infant had a spiral fracture on his left femur. The doctor recommended transporting the infant to Children's Hospital (Children's) in Denver for further treatment and care. The doctor was concerned and "a little suspicious" regarding the type of injury as well as the behavior of the infant and parents. The doctor contacted another physician at the emergency department at Children's to report the infant's condition and his suspicion that the infant had been abused.

¶4 A social worker from Children's contacted the Grand County Department of Social Services (DSS). A DSS social worker interviewed defendant at Children's and was concerned that the infant's injury was not consistent with defendant's report. The social worker also noted that defendant appeared to be under the influence of a substance. The social worker obtained a court order to perform a urinalysis on defendant to test for drug use.

¶5 Defendant's test indicated that she had amphetamine, marijuana, and methamphetamine in her urine. The police searched defendant's home pursuant to a warrant and seized several items, including drug paraphernalia, miscellaneous containers containing marijuana, marijuana concentrate, and methamphetamine.

¶6 Defendant was charged with child abuse resulting in serious bodily injury, possession of one gram or less of a schedule II controlled substance (methamphetamine), and possession of marijuana concentrate. Following a jury trial, she was acquitted of the child abuse charge, but found guilty of the remaining charges and of possession of less than one ounce of marijuana, a non-included petty offense included in the jury instructions and verdict forms at defendant's request. In August 2011, the trial court sentenced defendant to 2 concurrent 4–year terms of supervised probation, 192 hours of community service, and a suspended sentence of 90 days in jail.

## II. Retroactive Application of Amendment 64

¶7 Defendant contends that Amendment 64 should be applied retroactively and that her convictions for possession of marijuana concentrate and possession of less than one ounce of marijuana should be vacated. We agree.

### A. Standard of Review

¶8 We review de novo the interpretation of a constitutional provision, *Bruce v. City of Colorado Springs*, 129 P.3d 988, 992 (Colo.2006)(addressing constitutional amendment enacted by voter initiative); *People v. Clendenin*, 232 P.3d 210, 212 (Colo.App.2009) (same), and of a statute. *Larson v. Sinclair Transp. Co.*, 2012 CO 36, ¶7, 284 P.3d 42. We use general rules of statutory construction in construing citizen-initiated measures. *Huber v. Colo. Mining Ass'n*, 264 P.3d 884, 889 (Colo.2011). Our primary task is to give effect to the will of the people in construing a constitutional provision, *id.* and the intent of the General Assembly in construing a statute, *Larson*, ¶8. In doing so, we first look to the language of the constitutional provision or statute. *Huber*, 264 P.3d at 889. If the language is ambiguous we look to the constitutional or statutory provision's legislative history, the consequences of a given construction, and the overall goal of the constitutional or statutory scheme to determine the proper interpretation. *See Sperry v. Field*, 205 P.3d 365, 367 (Colo.2009).

## B.  Analysis

¶ 9 In November 2012, Amendment 64 was adopted by the vote of the people. It provides, in pertinent part:

In the interest of the efficient use of law enforcement resources, enhancing revenue for public purposes, and individual freedom, the people of the state of Colorado find and declare that the use of marijuana should be legal for persons twenty-one years of age or older and taxed in a manner similar to alcohol.

Colo. Const. art. XVIII, § 16(1)(a). As relevant here, the amendment further provides:

[T]he following acts are not unlawful and shall not be an offense under Colorado law ... for persons twenty-one year of age or older:

(a)  Possessing ... one ounce or less of marijuana.

Colo. Const. art. XVIII, § 16(3)(a). Amendment 64 defines "marijuana" to include all parts of the cannabis plant, as well as marijuana concentrate. Colo. Const. art. XVIII, § 16(2)(f).

¶ 10 Section 16(9) of the amendment provides, "[u]nless otherwise provided by this section, all provisions of this section *shall become effective upon* official declaration of the vote hereon by proclamation of the governor, pursuant to section 1(4) of article V." Colo. Const. art. XVIII, § 16(9) (emphasis added). The governor made the proclamation on December 10, 2012. 2013 Colo. Sess. Laws 3300. The question before us is whether section 16(2)(f) applies to defendant's conduct, which occurred twenty months before Amendment 64's effective date.

¶ 11 In general, when construing a constitutional amendment, unless its terms clearly show intent that the amendment be retroactively applied, "we presume the amendment has prospective application only." *Huber*, 264 P.3d at 889 (citing *Jackson v. State*, 966 P.2d 1046, 1052 (Colo.1998); *In re Interrogatories on Great Outdoors*

*Colo. Trust Fund*, 913 P.2d 533, 539 (Colo. 1996); *Bolt v. Arapahoe Cnty. Sch. Dist. No. Six*, 898 P.2d 525, 533 (Colo.1995)); *cf.* § 2–4–303, C.R.S.2013 ("The repeal, revision, amendment, or consolidation of any statute ... shall not have the effect to release, extinguish, alter, modify, or change in whole or in part any penalty, forfeiture, or liability, either civil or criminal, which shall have been incurred under such statute, unless the ... act so expressly provides....").

¶ 12 Here, the language of Amendment 64 does not clearly express an intent for retroactive application of section 16(3)(a).[1] The general presumption of prospective application, however, is subject to a doctrine established by our General Assembly and supreme court enabling a defendant to benefit retroactively from a significant change in the law. Section 18–1–410(1)(f)(I), C.R.S. 2013, permits a defendant to request postconviction relief if "there has been significant change in the law, applied to the applicant's conviction or sentence, allowing in the interests of justice retroactive application of the changed legal standard." Thus, a defendant is entitled to seek the benefits of amendatory legislation that mitigates the penalties for crimes when he files a motion for postconviction relief. *People v. Thomas*, 185 Colo. 395, 395, 525 P.2d 1136, 1138 (1974). The supreme court extended this doctrine to defendants seeking relief on direct appeal. *People v. Thornton*, 187 Colo. 202, 203, 529 P.2d 628, 628 (1974). Amendment 64, by decriminalizing the personal use or possession of one ounce or less of marijuana, meets the statutory requirement for "a significant change in the law" and eliminates and thus mitigates the penalties for persons convicted of engaging in such conduct.

¶ 13 This case is therefore similar to *People v. Bloom*, 195 Colo. 246, 577 P.2d 288 (1978). There, the defendant was convicted of possession of marijuana under a 1963 statute that provided for imprisonment from two to fifteen years; the trial court sentenced

---

1.  To the extent relevant, the "Blue Book" prepared for the 2012 election (an explanatory publication prepared by the Legislative Council of the Colorado General Assembly), which is often looked to for legislative history of citizen-initiated constitutional amendments, *see People v. Clendenin*, 232 P.3d 210, 215 (Colo.App.2009), does not address whether section 16(3)(a) of Amendment 64 applies retroactively.

him to five to twelve years. *Id.* at 251–52, 577 P.2d at 292. However, after he had committed the offense,[2] the legislature amended the statute to reduce the offense to a misdemeanor with a maximum sentence of one year. *Id.* at 251, 577 P.2d at 292. Applying *Thomas*, the court held that the defendant, on direct appeal, was entitled to the benefits of the amendatory legislation that mitigated the penalty for the possession offense. *Id.* Although *Bloom* involved a mitigating statute, we see no reason to reach a different result when the mitigation is accomplished by constitutional amendment. *See Huber*, 264 P.3d at 889 (applying statutory construction principles to constitutional amendment); *Bickel v. City of Boulder*, 885 P.2d 215, 228 n. 10 (Colo.1994) (same).

¶ 14 Further, we note that in *Bloom*, the court construed *Thomas* as holding "that a defendant is entitled, whenever constitutionally permissible, to the benefits of amendatory legislation which mitigates the penalty for a crime." 195 Colo. at 251, 577 P.2d at 292 ("[t]he legislature intended the changed legal standards to apply wherever constitutionally permissible."); *see also Thomas*, 185 Colo. at 391, 525 P.2d at 1137.

¶ 15 Citing *Riley v. People*, 828 P.2d 254, 258 (Colo. 1992), the People assert that, under *Thomas*, "a defendant is not entitled to the ameliorative effects of amendatory legislation if the General Assembly has not clearly indicated its intent to require such retroactive application." The People argue, therefore, that defendant is not so entitled because there was no express intention by the voters for retroactive application. We are not persuaded.

¶ 16 In *Riley*, and the cases cited therein, the court found no entitlement to the ameliorative effect of the legislation where the amendatory legislation expressly provided that the provisions were to apply to acts committed on or after that date. In contrast, in *Bloom*, though not discussed in the opinion, the amending statute's effective date clause provided, "[t]his act shall take effect July 1, 1975." Ch. 115, § 10, 1975 Colo. Sess. Laws 437. This clause did not address whether the legislation applied retroactively.

¶ 17 Similarly, here, as noted, neither Amendment 64 nor the 2012 Blue Book addresses whether Amendment 64 applies retroactively. Under these circumstances, and pursuant to *Bloom*, we conclude that the safe harbor established by section 16(3)(a) of Amendment 64 applies to defendant.

¶ 18 Here, defendant was convicted of possessing less than one ounce of marijuana under section 18–18–406(1), Ch. 347, sec. 6, 2009 Colo. Sess. Laws 1815, and possessing three ounces or less of marijuana concentrate under 18–18–406(4)(b)(I), Ch. 347, sec. 6, 2009 Colo. Sess. Laws. 1815, for conduct occurring on or about March 24, 2010. Marijuana and marijuana concentrate are treated separately under the Colorado Criminal Code, *see* section 18–18–102(18), C.R.S.2013, but are deemed the same under Amendment 64, *see* Colo. Const. art. XVIII, § 16(1)(f). Because the marijuana possession charge was based on less than one ounce, the quantity possessed by defendant falls within the safe harbor established by section 16(3)(a) of Amendment 64.

¶ 19 The undisputed evidence in the record also establishes that the quantity of marijuana concentrate possessed by defendant was well under one ounce. The concentrate at issue was found in a small vial. While the quantity of concentrate was sufficient to be tested for its content, it could not be removed from the vial for weighing. The gross weight, including the vial, was less than nine grams, which is about one-third of an ounce. National Institute of Standards and Technology, *NIST Handbook 44, Appendix C—General Tables of Units of Measurement* C–19 (2013) (one ounce is the equivalent of 28.350 grams); *see* § 35–14–103, C.R.S.2013 (the equivalents of weights and measures as published by the NIST are recognized and govern transactions in Colorado). Therefore, the quantity of marijuana concentrate for

---

2. The new statute was passed before the defendant in *Bloom* was sentenced, and his counsel unsuccessfully raised the issue at sentencing. Here, Amendment 64 was adopted after sentencing and the filing of defendant's notice of appeal, so it was not possible for him to raise the issue in the trial court.

which defendant was convicted also falls within the Amendment 64 safe harbor.

¶ 20 Because defendant's convictions were pending appeal when Amendment 64 became effective on December 10, 2012, her convictions for possession of marijuana concentrate and less than one ounce of marijuana must be reversed and vacated. In light of this conclusion, we need not address defendant's argument that there was insufficient evidence to convict her of these offenses.

### III. Police Officer's Testimony

¶ 21 Defendant argues that her methamphetamine conviction should be reversed because the trial court erred by allowing a police officer to testify regarding the physical effects of methamphetamine use without requiring that the officer be qualified as an expert pursuant to CRE 702. We are not persuaded

¶ 22 We review the trial court's evidentiary rulings for an abuse of discretion. *People v. Ibarra*, 849 P.2d 33, 38 (Colo.1993); *People v. Bernard*, 2013 COA 79, ¶ 8, 305 P.3d 433. The trial court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair. *Ibarra*, 849 P.2d at 38; *Bernard*, ¶ 8. Absent a showing of abuse of discretion, we will not disturb the trial court's evidentiary rulings on appeal. *People v. Eppens*, 979 P.2d 14, 22 (Colo.1999).

¶ 23 Under CRE 701, a lay witness may testify only as to his opinions or inferences that are rationally based on his perception, helpful to a clear understanding of the witness's testimony or the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of CRE 702. Only a witness qualified as an expert by knowledge, skill, experience, training, or education may testify concerning scientific, technical, or specialized knowledge. CRE 702. Applying CRE 701 and 702 to police officers, the supreme court has held that, where "an officer's testimony is based *not only* on her perceptions and observations of the crime scene, but also on her specialized training or education, she must be properly qualified as an expert before offering testimony that amounts to ex-

pert testimony." *People v. Stewart*, 55 P.3d 107, 124 (Colo.2002) (emphasis added). A lay witness, however, may express an opinion as to whether a defendant was under the influence of drugs, as long as a proper foundation has been laid. *People v. Souva*, 141 P.3d 845, 850 (Colo.App.2005).

¶ 24 Prior to trial, defendant moved to bar a police officer, who had not been endorsed as an expert witness, from testifying that defendant appeared to be under the influence of methamphetamine when she brought her son to the hospital. While defendant conceded that the officer could describe defendant's behavior, he argued that the officer should not be permitted to state that, based on his training, experience, or expertise, defendant appeared to be under the influence of drugs. The trial court ruled that, as a lay witness, the officer could testify as to his observations based on his eleven years of experience as a police officer. However, the officer could not testify regarding anything based on his specialized knowledge or training.

¶ 25 At trial, the officer testified that, during his eleven years as a police officer, he had come into contact with people under the influence of drugs, and specifically under the influence of methamphetamine. He described the characteristics he had previously observed in people under the influence of methamphetamine, including an agitated state, bloodshot and watery eyes, repetitive movement, tongue movement, and difficulty focusing.

¶ 26 The officer next testified that when he arrived at the hospital, defendant was exhibiting signs of repetitive movement and tongue movement, and was agitated. These actions led the officer to believe defendant was under the influence of a narcotic. The prosecutor asked the officer, "[B]ased on your experience and training, the people you have come into contact with, what type of narcotic did you think [defendant] was under the influence of?" Defendant objected; the trial court overruled the objection. The officer then testified, "Based on my experience and what—in my dealings with individuals who have consumed methamphetamine, I did believe at the time she was under the influ-

ence of some type of narcotic." Even if the prosecutor's question included language implicating CRE 702, the officer appropriately limited his testimony to his own observations and experience, rather than any specialized training.

¶ 27 In any event, any error was harmless. Where evidence is merely cumulative and does not substantially influence the verdict or affect the trial's fairness, any error in its admission is harmless. *See People v. Caldwell*, 43 P.3d 663, 668 (Colo.App.2001). Evidentiary errors do not require reversal if they are harmless. *Id.*

¶ 28 The officer's testimony regarding defendant's methamphetamine use was cumulative of other evidence:

- The officer's testimony followed the testimony of two doctors and two social workers who had observed defendant and provided corroborating descriptions of her agitated state, repetitive movements, and tongue movements.

- A doctor qualified as an expert in child abuse opined that defendant's behavior was consistent with methamphetamine use.

- The results of defendant's urine test indicated that she had used methamphetamine.

- When confronted with the results of the urine test, defendant admitted to the officer that she had used methamphetamine.

¶ 29 We therefore conclude that the trial court did not abuse its discretion in admitting the officer's testimony and that its admission, even if in error, was harmless.

## IV. Conclusion

¶ 30 The judgment of conviction on the methamphetamine conviction is affirmed, the other convictions are reversed and the case is remanded with directions for the trial court to vacate defendant's convictions and sentences for possession of marijuana concentrate and less than one ounce of marijuana.

JUDGE TAUBMAN and JUDGE LICHTENSTEIN concur.