CHIEF JUSTICE COATS, dissenting.
¶ 40 I dissent from the direction taken by the majority today not because it involves a matter of substantial import to the jurisdiction, or because it erroneously construes constitutional provisions that might unduly tie the hands of the legislature, or even because it misstates principles of construction that might adversely affect our interpretations of law in the future. The presumption, or better mandate, set out by the majority today with regard to the retroactive application of amendatory criminal legislation can easily be changed by the legislature itself if it so chooses, and applications of this presumption not intended by the legislature can easily be avoided by simply indicating with greater particularity the acts to which amendatory legislation is intended to apply. I dissent rather because I believe the majority fails to appreciate the sophistication of the distinctions made by those preceding us in this lengthy debate and, as a result, mischaracterizes both their reasoning and our prior case law, unfortunately breathing new life into a holding that was always problematic but had by its own terms finally become moribund without having to actually be overruled.
¶ 41 As an overarching matter, I do not agree that after our decision in People v. Thomas, 185 Colo. 395, 525 P.2d 1136 (1974), a second line of cases developed for the counter proposition that "retroactivity occurs only if the General Assembly expressly provides it," which proposition, according to the majority, must now be rejected as dicta. See maj. op. at ¶ 28. Not only do I disagree that this proposition was dicta in People v. Macias, 631 P.2d 584 (Colo. 1981), People v. McCoy, 764 P.2d 1171 (Colo. 1988), and Riley v. People, 828 P.2d 254 (Colo. 1992), the cases to which it is attributed by the majority; I disagree that it even conflicts with the holding of Thomas or alters it in any way. Whether or not Thomas may for other reasons be subject to criticism, its holding rests entirely on its conclusion that "[s]ection 40-1-510(1)(f) [ (currently 18-1-410(1)(f)(I) ) ] expressly provides for the application of the changed legal standards." Thomas, 525 P.2d at 1138 (emphasis added). That being the case, I do not believe the characterizations of it in these later cases were curious, strange, or muddied the waters further, as does the majority, but rather that they very naturally addressed the question of precisely which "changed legal standards" Thomas referenced when it found that section 510(1)(f) "expressly provided" for their retroactive application, and that these cases limited the holding of Thomas accordingly.
¶ 42 Although never overruled, the thinly supported, bare majority opinion in Thomas, representing as it does one of our earliest interpretations of the new 1972 Colorado Criminal Code, and particularly the applicability of its substantially restructured crimes and punishments to pre-1972 offenses, has presented interpretational dilemmas since its very announcement. Apart from its assertion, with questionable examples from other jurisdictions, that its interpretation found support in the common law, see id. at 1138, Thomas offered precious little justification for its statutory construction, instead concentrating on distinguishing itself from this court's holding some nine months earlier in People v. Herrera, 183 Colo. 155, 516 P.2d 626 (1973), on the grounds that Thomas, unlike Herrera, filed for postconviction review before his sentence had become final, see Thomas, 525 P.2d at 1137. Because our holding in Herrera was concerned only with the extent to which the discretionary reduction of a final sentence by *183 the judiciary would conflict with the power of commutation constitutionally reserved to the Governor, Herrera, 516 P.2d at 627, the rationale for the Thomas majority's holding-that the sentence reduction in that case was not discretionary with the court at all-has always remained unclear. If, as the Thomas majority appeared to hold, retroactive application of the ameliorative sentencing provisions of the new 1972 code was statutorily mandated, the defendant's initial sentence in that case, imposed after amendment of the sentencing statute, was clearly illegal and subject to correction at any time, regardless of finality.[1]
¶ 43 In any event, there can simply be no question that Thomas did not hold, as the majority seems to find, that the retroactive application of ameliorative sentencing legislation in this jurisdiction is mandated in the absence of express legislative provision that it apply only prospectively. Instead Thomas held that the defendant in that case was entitled to the retroactive application of the changed legal standards of the new code precisely because that was the result expressly provided for by the legislature. Despite strenuous objection from the three-justice dissent, especially in light of a recent amendment to section 510(1)(f) changing the pertinent statutory language from "Requiring in the interest of justice" to "Allowing in the interest of justice," see Thomas, 525 P.2d at 1138 (Lee, J., dissenting), the Thomas majority found that section 510(1)(f) of the new code "expressly provide[d] for the application of the changed legal standards," meaning, as it further explained, that such application was mandatory, see id. at 1138.
¶ 44 Significantly, however, the Thomas majority did not find this express provision in section 510(1)(f), a statute which, by its own terms merely provided a procedural vehicle for postconviction relief, to be sufficient in itself to overcome the more express presumptions specified in the legislature's own statement of its drafting conventions, § 2-4-202, C.R.S. (2017), or the legislature's express prohibition against retroactive application of the new Colorado Criminal Code, see ch. 152, sec. 1, § 40-1-103(2), 1973 Colo. Sess. Laws 533, 533. Rather, it found the express provision in section 510(1)(f) dispositive of the applicability of the "changed legal standards" of the 1972 code to the defendant in that case only because section 40-1-103(2) (currently 18-1-103(2) ), barring application of the new code to offenses committed before July 1, 1972, had recently been amended by the addition of the words, "Except as otherwise expressly provided by section 40-1-510...." See Thomas, 525 P.2d at 1138. Notwithstanding its dearth of legal justification in other respects, Thomas refers to the "changed legal standards" of the new code at three separate points in its rationale and finds the procedural provision of section 510(1)(f) meaningful only because of its incorporation in section 103(2), effectively dictating the applicability of the new code to prior offenses. See id.
¶ 45 Our later cases, which the majority understands to have departed in various ways from Thomas, and ultimately to have "flipped" the Thomas rule favoring retroactively applying ameliorative legislation to non-final convictions by instead announcing a rule that retroactive relief remains unavailable unless expressly provided for, maj. op. at ¶ 21, are better understood as merely explaining that the "express[ ] provi[sion]" for retroactive application found by the Thomas majority in sections 103 and 510(1)(f) in no way adversely affected subsequent statutory amendments themselves indicating otherwise. Riley, in particular, explained that in Thomas we found the defendant entitled to "the benefits of the new legislation that became effective prior to his initial sentencing" for the reason that this result was "consistent with legislative intent." Riley, 828 P.2d at 258. By contrast, we explained, in subsequent cases we emphasized that a defendant is not so entitled if the legislature has not similarly clearly indicated its intent to require retroactive application. Id. Rather than flipping a presumption of legislative intent, in Riley we merely clarified that retroactive application of ameliorative criminal legislation *184 is a matter of legislative intent, but that the legislative intent found in Thomas to have been "clearly provided" by sections 103 and 510, did not control the outcomes in those subsequent cases. See id.
¶ 46 Because we did not suggest any conflict between the legislative intent to require retroactive application that we found in Thomas and the legislative intent to require only prospective application we found in Riley, which would have entailed resolution according to rules of construction governing general and special, or earlier and later, statutory provisions, I believe our holding in Riley is most naturally explained as recognizing the limited applicability of Thomas to the retroactive application of the criminal code to pre-criminal code offenses conviction for which had not yet become final. In Thomas we found the legislative intent expressed in section 510(1)(f) meaningful only because it had been incorporated in section 103, providing a limited exception to that statute's otherwise express bar to retroactive application of the new code. See Thomas, 525 P.2d at 1137-38. With several notable, but I believe easily explained, exceptions, at the time of our distinction in Riley, we had relied on the rule of Thomas exclusively by applying ameliorative provisions of the comprehensive criminal code for the benefit of acts committed before, but with final sentencing following, its enactment.[2]
¶ 47 Finally, I object to the majority's discarding of what it understands to be the subsequent counter authority of Macias, McCoy, and Riley as mere dicta. I do not consider the resolution of a case or controversy on one particular ground to be dicta merely because a narrower rule of decision may have been available; but to the extent the majority considers that to be the case, surely the rule of Thomas, if understood as applying to more than ameliorative amendments of the new criminal code, enacted even before the benefitted defendant was initially sentenced, would seem to be equally, if not less, binding.
¶ 48 Because I believe the majority creates a new presumption with regard to the retroactive application of criminal statutes, which conflicts with both the legislature's own rules of construction and the prior case law of this court, I respectfully dissent.
I am authorized to state that JUSTICE BOATRIGHT joins in this dissent.

The amendment to 510(1)(f) limiting its assertion as a ground for review of sentences that had not yet become final on direct appeal was added after and as a result of Herrera and Thomas, rather than as a cause of them. See ch. 56, sec. 28, § 18-1-410, 1975 Colo. Sess. Laws 205, 211.

The majority notes our reliance on the rule of Thomas for retroactive application of ameliorative sentencing provisions to post-1972 criminal acts in both People v. Bloom, 195 Colo. 246, 577 P.2d 288 (1978) and Glazier v. People, 193 Colo. 268, 565 P.2d 935 (1977). In the latter, we expressly noted that the People neither objected to nor appealed from this retroactive sentencing by the trial court, Glazier, 565 P.2d at 936, and in the former, the ameliorative legislation was applied to what we recognized as a meaningless sentence for possession ordered to run concurrently with an identical sentence for sale of the same quantum of drugs, constituting a second conviction for the same offense, Bloom, 577 P.2d at 292, which we have subsequently disapproved altogether as unauthorized by the legislature, see People v. Abiodun, 111 P.3d 462, 468 (Colo. 2005). Although not referenced by the majority, in People v. Litsey, 193 Colo. 341, 565 P.2d 1343 (1977), and in People v. Renfrow, 193 Colo. 131, 564 P.2d 411 (1977), we also applied a 1976 amendment to the habitual criminal statute to sentencing for offenses committed before the amendment on the grounds that "[c]learly [the amendment] evidences the intent of the legislature not to be as severe with one whose earlier crimes had occurred in the distant past." Litsey, 565 P.2d at 1344.