The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
June 20, 2019

## 2019COA90

**No. 16CA1944, *People v. Hamm* — Crimes — Uniform
Controlled Substances Act of 2013; Sentencing — Amendatory
Statutes — Retroactive Application**

A division of the court of appeals holds that the Uniform
Controlled Substances Act of 2013 does not apply retroactively and
the effective date language of the Act is unambiguous; a person
convicted of a crime who did not file a direct appeal may not seek a
postconviction remedy based on a "significant change in the law";
and an attorney waives an argument by not presenting it to the
court after a hearing at which the court and the attorney
acknowledged that the argument was not properly before the court.

COLORADO COURT OF APPEALS                                    **2019COA90**

Court of Appeals No. 16CA1944
Arapahoe County District Court No. 11CR1851
Honorable F. Stephen Collins, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Charles Marcus Hamm,

Defendant-Appellant.

ORDER AFFIRMED

Division IV
Opinion by JUDGE LIPINSKY
Román and J. Jones, JJ., concur

Announced June 20, 2019

Philip J. Weiser, Attorney General, Kevin E. McReynolds, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jeanne Segil, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Charles Marcus Hamm, appeals the district court's denial of his request for an evidentiary hearing on his petition for postconviction relief (the Petition).  Hamm contends that his trial counsel was ineffective by not advising him that the penalty reductions enacted through the Uniform Controlled Substances Act of 2013 (the Act) apply retroactively and, therefore, require a reduction in his sentence.  He also contends that the district court erred in denying him an evidentiary hearing on his challenge to the voluntariness of his stipulation (the Stipulation) to a thirty-year prison sentence.

¶ 2    We hold that, under section 18-1-410(1)(f)(II), C.R.S. 2018, and Crim. P. 35(c)(1), Hamm's failure to file a direct appeal precludes him from seeking postconviction review of his sentence based on a "significant change in the law."  Further, we hold that the trial court did not err in denying Hamm an evidentiary hearing because the Act does not apply retroactively and thus cannot reduce Hamm's sentence.

### I. Hamm's Conviction and Postconviction Motions

¶ 3    Hamm was charged with one count of distribution of a controlled substance (3.4 grams of cocaine) in September 2011 and five habitual criminal counts based on his prior felony convictions. A jury convicted him on the distribution count.

¶ 4    The district court continued the trial on the habitual counts while the defense and the People negotiated an agreement on Hamm's sentence. In exchange for dismissal of the habitual counts, Hamm stipulated to a sentence of thirty years in the custody of the Department of Corrections and five years of parole to avoid a mandatory sentence of sixty-four years.

¶ 5    Hamm filed a pro se motion in the district court to extend the deadline for an appeal. The court denied the motion because he had filed it in the wrong court. Hamm did not directly appeal his conviction or his sentence.

¶ 6    Hamm filed the Petition more than one year later. For purposes of this appeal, he argued in the Petition that his trial counsel had been ineffective by failing to advise him that the General Assembly had recently passed the Act and that the penalty

reductions reflected in the Act applied retroactively. Hamm argued that, if the Act had been applied to him, he would have faced a maximum sentence of sixteen years. He also argued that he should be permitted to withdraw the Stipulation because he had entered into it without knowledge of the Act and, further, had agreed to the thirty-year sentence equivocally. He asked the district court to conduct an evidentiary hearing on the Petition.

¶ 7 The district court denied the Petition after determining that the Act did not apply retroactively. The court held that Hamm's ineffective assistance claim failed because his trial counsel would have been misstating the law if he had advised Hamm that the Act applied retroactively. The court further found that the Stipulation was enforceable because Hamm had entered into it freely, knowingly, and voluntarily. In light of its findings, the district court declined to conduct an evidentiary hearing on the Petition.

## II. Section 18-1-410(1)(f)(II) and Crim. P. 35(c)(1) Bar Hamm's Ineffective Assistance Claim

¶ 8 We resolve Hamm's ineffective assistance of counsel claim on grounds not raised in the briefs because, as a matter of law, that claim is not properly before us. *See Moody v. People*, 159 P.3d 611,

615 (Colo. 2007) ("[A]ppellate courts have the discretion to affirm decisions . . . on any basis for which there is a record sufficient to permit conclusions of law, even though they may be on grounds other than those relied upon by the trial court.").

### A. The Governing Statute and Rule

¶ 9 Section 18-1-410(1)(f)(II) and Crim. P. 35(c)(1) bar Hamm's ineffective assistance claim because Hamm did not file a direct appeal of his conviction and sentence. Thus, the district court should not have considered the claim.

¶ 10 Section 18-1-410 sets forth the circumstances under which a person convicted of a crime may seek postconviction review of his sentence. Subsection (1) of the statute allows a defendant who did not file an appeal to move for postconviction review: "Notwithstanding the fact that no review of a conviction of crime was sought by appeal within the time prescribed therefor, or that a judgment of conviction was affirmed upon appeal, every person convicted of a crime is entitled as a matter of right to make applications for postconviction review." § 18-1-410(1).

¶ 11    Subsection (1)(f) of the statute applies to postconviction motions premised on a "significant change in the law." § 18-1-410(1)(f).  Subsection (1)(f)(I) authorizes postconviction motions on the grounds that "there has been significant change in the law, applied to the applicant's conviction or sentence, allowing in the interests of justice retroactive application of the changed legal standard."  § 18-1-410(1)(f)(I).

¶ 12    The next subsection of the statute imposes conditions on postconviction motions based on a "significant change in the law." A person convicted of a crime is barred from arguing a "significant change in the law" in a postconviction motion if he "has not sought appeal of a conviction within the time prescribed therefor or if a judgment of conviction has been affirmed upon appeal." § 18-1-410(1)(f)(II).

¶ 13    Crim. P. 35(c)(1) contains similar language:

> If, prior to filing for relief pursuant to this paragraph (1), *a person has sought appeal of a conviction within the time prescribed therefor and if judgment on that conviction has not then been affirmed upon appeal*, that person may file an application for postconviction review upon the ground that there has been a significant change in the law, applied to the

5

> applicant's conviction or sentence, allowing in the interests of justice retroactive application of the changed legal standard.

Crim. P. 35(c)(1) (emphasis added).

¶ 14      Therefore, a person may not seek postconviction relief based on a "significant change in the law" unless (a) he has filed a timely appeal and (b) an appellate court has not affirmed his judgment of conviction.

### B. Hamm Did Not File an Appeal and, Therefore, May Not Seek Postconviction Relief Based on a "Significant Change in the Law"

¶ 15      Hamm was convicted on the distribution count on January 31, 2013, and stipulated to the thirty-year sentence on September 30, 2013. Hamm filed his motion to extend the deadline for an appeal in the district court on October 21, 2013. The district court denied the motion, however, because Hamm had filed it in the wrong court. *See* C.A.R. 4(b)(1) ("[T]he appellate court may . . . extend the time for filing a notice of appeal . . . ."). The record contains no indication that Hamm ever filed in this court a motion to extend the time to appeal. In any event, Hamm never filed a direct appeal of his conviction or sentence, which became final when he missed the deadline to file a notice of appeal.

6

¶ 16    Hamm filed the Petition two years later, on October 11, 2015. Because he did not file an appeal, he did not satisfy the conditions precedent for seeking postconviction relief based on a "significant change in the law," regardless of whether the Act applies retroactively. § 18-1-410(1)(f)(II); Crim. P. 35(c)(1); *see People v. Stellabotte*, 2018 CO 66, ¶ 33, 421 P.3d 174, 181 ("Subsection 18-1-410(1)(f)(I) provides for retroactive application of significant change in the law to a defendant's conviction or sentence but, under subsection (II), during only direct appeal, before the conviction is final. Thus, it applies only to criminal prosecutions and during only a narrow procedural timeframe."); *Glazier v. People*, 193 Colo. 268, 269, 565 P.2d 935, 936 (1977) ("As we have repeatedly held, a defendant is entitled to the benefits of amendatory legislation when relief is sought before finality has attached to the judgment of conviction."); *People v. Thomas*, 185 Colo. 395, 398, 525 P.2d 1136, 1138 (1974) (holding that where the defendant sought postconviction relief during the pendency of his appeal, "amendatory legislation mitigating the penalties for crimes

should be applied to any case which has not received final judgment").

¶ 17 For this reason, we affirm the district court's denial of Hamm's request for a hearing on his ineffective assistance of counsel claim.

### III. The District Court Did Not Err in Denying Hamm's Request for an Evidentiary Hearing on His Challenge to the Stipulation

#### A. Hamm May Appeal the District Court's Ruling on the Enforceability of the Stipulation

¶ 18 The People argue that Hamm missed the deadline for appealing the district court's denial of his request for an evidentiary hearing on his challenge to the Stipulation. We disagree and therefore consider the issue on the merits.

¶ 19 Hamm presented through the Petition all of his arguments relevant to this appeal. The district court denied Hamm's request for an evidentiary hearing on the voluntariness of the Stipulation on November 25, 2015, ten months before the district court adjudicated Hamm's ineffective assistance of counsel claim. The People contend that Hamm was required to appeal the ruling on his claim concerning the Stipulation within forty-nine days of November 25, 2015, which he did not do. Instead, Hamm filed a notice of appeal of the district court's denial of his request for an evidentiary

8

hearing on each argument presented in the Petition within forty-nine days of the date on which the district court resolved the last of those arguments.

¶ 20    Neither party has brought to our attention, and we have not found, any Colorado case addressing the deadline for appealing rulings, made on different dates, that resolve discrete arguments presented through a single postconviction motion.  Our supreme court has expressed a preference for avoiding piecemeal appellate proceedings, at least in the context of reviewing the disclosure of potentially exculpatory evidence in postconviction proceedings.  *See People v. Owens*, 2014 CO 58, ¶ 18, 330 P.3d 1027, 1032.  And, as a general rule, "an entire case must be resolved by a final judgment before an appeal is brought."  *Grear v. Mulvihill*, 207 P.3d 918, 921 (Colo. App. 2009); *cf.* C.R.C.P. 54(b).

¶ 21    In light of the courts' desire to avoid piecemeal appeals, we conclude that Hamm timely appealed the district court's denial of his request for an evidentiary hearing on his challenge to the Stipulation.

### B. The Standard of Review in Appeals of Denials of Evidentiary Hearings on Postconviction Motions

¶ 22   A district court must grant an evidentiary hearing on a Crim. P. 35(c) motion unless the motion, files, and record establish that the allegations in the motion are without merit and do not warrant postconviction relief. Crim. P. 35(c)(3)(IV); *see White v. Denver Dist. Court*, 766 P.2d 632, 634-35 (Colo. 1988).

¶ 23   We review de novo a district court's conclusions of law. *People v. Hardin*, 2016 COA 175, ¶ 28, 405 P.3d 379, 385. "We will not overturn the trial court's findings of fact if there is adequate support for them in the record; however, if the findings of fact are clearly erroneous and lack support in the record, we must set them aside." *People v. Hufnagel*, 745 P.2d 242, 244 (Colo. 1987). Further, we will affirm a district court's denial of a Rule 35 motion on any ground supported by the record, even if the district court did not consider or contemplate that ground. *People v. Scott*, 116 P.3d 1231, 1233 (Colo. App. 2004).

### C. Hamm's Postconviction Challenge to the Stipulation

¶ 24   Hamm contends that the Stipulation was involuntary, and should be set aside, because he was not aware that the sentence

10

reductions reflected in the Act applied to him and because he accepted the Stipulation equivocally. We address these issues separately.

### 1. The Act Does Not Apply Retroactively

¶ 25      In interpreting a statute, we look to its plain meaning to determine the legislature's intent. *People v. Manzo*, 144 P.3d 551, 554 (Colo. 2006). If the statutory language is clear, we construe the statute according to its plain and ordinary meaning. *Specialty Rest. Corp. v. Nelson*, 231 P.3d 393, 397 (Colo. 2010).

¶ 26      Thus, in considering whether a statute applies retroactively, we determine the intent of the General Assembly first by analyzing the statutory language. *People v. Russell*, 2014 COA 21M, ¶ 8, 396 P.3d 71, 73, *aff'd*, 2017 CO 3, 387 P.3d 750. Where the statutory language is clear and unambiguous, we apply the provision as written; no further statutory construction is necessary. *Specialty Rest. Corp.*, 231 P.3d at 397.

¶ 27      Statutes that, by their terms, are effective "on or after" a specified date do not apply retroactively. *Riley v. People*, 828 P.2d 254, 258-59 (Colo. 1992); *People v. McCoy*, 764 P.2d 1171, 1174

11

(Colo. 1988); *see Stellabotte*, ¶ 29, 421 P.3d at 180 (stating that the rule that criminal defendants may benefit from amendatory legislation that took effect before their convictions became final on direct appeal does not apply to statutes that, by their terms, concern offenses committed "on or after" a certain date).

¶ 28    Section 18-1.3-401.5, C.R.S. 2018, could not be clearer: the sentencing ranges adopted through the Act "only apply to a conviction for a drug felony offense . . . committed on or after October 1, 2013." § 18-1.3-401.5(1); *see People v. McRae*, 2016 COA 117, ¶ 17, ___ P.3d ___, ___ ("[R]etroactive application of [the Act] would have been unlawful . . . .") (*cert. granted* July 3, 2017). We cannot apply the sentencing ranges in the Act retroactively because the General Assembly tells us they do not apply retroactively.

¶ 29    But this does not conclude our statutory analysis. Hamm contends that the "on or after" language of section 18-1.3-401.5 is ambiguous because it conflicts with the references to July 1, 1992, in section 18-18-602, C.R.S. 2018.

¶ 30    As Hamm notes, section 18-18-602 states, in relevant part, that "penalties that were incurred, and proceedings that were begun prior to July 1, 1992, are not affected by the enactment of [the Act]." § 18-18-602.  Hamm reasons that this language means that penalties incurred and proceedings begun on or after July 1, 1992, are affected by the enactment of the Act.  Under this logic, the Act would apply to Hamm's sentence.

¶ 31    The Act, however, made but one change to section 18-18-602, which the General Assembly had enacted as part of the Controlled Substances Act of 1992: it replaced a reference to the "Uniform Controlled Substances Act of 1992" with a reference to the "Uniform Controlled Substances Act of 2013."  *See* Ch. 333, sec. 60, § 18-18-602, 2013 Colo. Sess. Laws 1940.  In the Act, the General Assembly replaced every reference to the Uniform Controlled Substances Act of 1992 in the Colorado Revised Statutes with a reference to the Act.  *See, e.g.*, Ch. 333, sec. 6, § 18-18-101, 2013 Colo. Sess. Laws 1907.  Whether by design or not, the drafters of the Act did not, however, also replace the references to "July 1, 1992" in section 18-18-602 with references to "October 1, 2013."

13

¶ 32　　We disagree with Hamm that *People v. Summers*, 208 P.3d 251

(Colo. 2009), compels the conclusion that the effective date of the

Act is ambiguous. *Summers* concerned interpretation of a statute

containing contradictory retroactivity language. The substantive

language of the statute stated that it applied retroactively, while the

effective date clause said the statute applied to crimes committed

on or after the effective date. *Id.* at 254. The legislative history and

other sources did not resolve the conflict. *Id.* at 254-56. The

supreme court applied the rule of lenity, under which "ambiguity in

the meaning of a criminal statute must be interpreted in favor of the

defendant." *Id.* at 258 (quoting *People v. Thoro Prods. Co.*, 70 P.3d

1188, 1198 (Colo. 2003)). Critically, unlike here, in *Summers*, the

General Assembly had adopted the conflicting provisions through

the same legislation. *Id.* at 253-54.

¶ 33　　A close parsing of section 18-18-602 is unnecessary. Even if

sections 18-1.3-401.5 and 18-18-602 irreconcilably conflict, the

General Assembly's 2013 language supersedes any conflicting

language dating back to the 1992 version of the legislation. *See*

*People v. Heitzman*, 852 P.2d 443, 446 (Colo. 1993) (stating that,

14

pursuant to ordinary principles of statutory construction, a later-adopted statute prevails over an earlier one (citing *M.S. v. People*, 812 P.2d 632, 637 (Colo. 1991))).

¶ 34     Further, even if the General Assembly had, through the Act, inserted the references to July 1, 1992, in section 18-18-602, the General Assembly's use of specific "on or after" language in 18-1.3-401.5 supersedes the more general language of section 18-18-602.  *See* § 2-4-205, C.R.S. 2018 (providing that courts must give effect to the more "special or local" statute in the event of a conflict between such a statute and a more general statute); *People v. Smith*, 932 P.2d 830, 832 (Colo. App. 1996) ("In the event statutes conflict, effect shall be given to both, if possible.  If not, the more specific provision shall prevail as an exception to the general rule, absent a clear legislative intent to revoke the prior specific provision.").

¶ 35     Thus, the Act contains a single effective date, which specifies that the amended sentencing ranges in the Act apply only to offenses committed "on or after October 1, 2013." § 18-1.3-401.5. This language compels the conclusion that the sentencing ranges in

15

section 18-1.3-401.5 are prospective only. *See Stellabotte*, ¶ 29, 421 P.3d at 180. "[C]ourts cannot rewrite statutory or administrative rules under the guise of interpretation." *Winter v. Indus. Claim Appeals Office*, 2013 COA 126, ¶ 27, 321 P.3d 609, 614.

¶ 36    We further note that the Act specifically provides that section 18-1.3-401.5 applies to convictions for drug felony offenses *committed* on or after October 1, 2013. The jury found Hamm guilty of distributing cocaine in September 2011 — more than two years before the effective date of the Act.

¶ 37    For these reasons, we conclude that the Act does not apply retroactively. The sentencing ranges in the Act cannot reduce Hamm's sentence because the offense for which the jury convicted Hamm occurred more than two years before the effective date of the Act.

2.    Hamm Did Not Preserve His Argument that the Stipulation Was Not Voluntary Because He Had Not Known He Could Seek a Proportionality Review Based on the Act

¶ 38    Hamm also contends that the Stipulation was not voluntary because he was unaware at the time that he could seek a

16

proportionality review of his sentence based on adoption of the Act, even if the Act does not apply retroactively. *See People v. Anaya*, 894 P.2d 28, 32 (Colo. App. 1994) ("[W]hen the General Assembly subsequently amends a criminal sentencing statute, even though the statute is to be applied prospectively, the trial court may properly consider it when determining whether a defendant's sentence was grossly disproportionate.").

¶ 39    We agree with the People that we cannot consider this issue because Hamm did not properly raise it in the district court. *People v. Wolfe*, 213 P.3d 1035, 1037 (Colo. App. 2009).

¶ 40    At the hearing on the Petition, the district court inquired whether a ruling on the retroactivity issue would resolve Hamm's claim of ineffective assistance of counsel. The defense responded that the court had "to initially determine whether [Hamm] could have benefitted from this enactment in any way." Defense counsel proceeded to argue that Hamm's trial counsel had been ineffective by not advising Hamm that the Act applied retroactively.

¶ 41    After finding that the Act had no retroactive effect, the court

said, and Hamm's counsel agreed, that the defense had not

properly presented a proportionality argument:

> [THE COURT:]  Now, in the recent filing by defense, they brought up the issue of proportionality.  I think the *McRae* decision does make it clear that if defendant wishes to challenge proportionality, he has a right to do so. . . .
>
> *At this point, we don't have a proportionality review motion before the Court.*  And I think given how recent the *McRae* case is, it's only fair to give defense an opportunity to review that case.
>
> *If they believe they have a viable claim and they wish to pursue such a motion, they are free to file one.*  You know, obviously *McRae* is only one thing to consider.  But my ruling on this motion should not be interpreted as predetermining one way or the other proportionality.  *I think it's separate and distinct and is still out there for defense to consider.*
>
> Any question from defense on my order?
>
> MR. MARTIN:  No, Your Honor.
>
> . . . .
>
> THE COURT:  Anything else from defense?
>
> MR. MARTIN:  Judge, as to the proportionality motion, *I can tell you that is something that we do intend to pursue* . . . .

. . . .

> THE COURT:  And I think that's something that counsel have to look at.  They have to research and we can address it.  I'm not . . . making any ruling any which way on any of that.  Because I think that's why I keep referring back to there are any number of things that need to be considered.  And I think you need to look at the law and see what you think your viable options are.

(Emphases added.)

¶ 42    The quoted language makes clear that the defense conceded that Hamm had not presented a "proportionality review motion" and that the proportionality issue was "separate and distinct" from Hamm's argument regarding the effective date of the Act.  The defense never filed the "proportionality review motion" discussed at the hearing, however, even though Hamm's counsel had actual knowledge that the issue had not been properly raised in the district court.  We cannot consider Hamm's proportionality argument because he did not ask the district court to conduct a proportionality review of his sentence.  *Cf. People v. Gaskins*, 825 P.2d 30, 38-39 (Colo. 1992) (holding that an appellate court may conduct an initial proportionality review where the district court had declined to consider the defendant's challenge to his sentence).

19

¶ 43 Because Hamm did not properly raise his proportionality argument in the district court, "we have nothing to review." *People v. Tee*, 2018 COA 84, ¶ 42, ___ P.3d ___, ___. Therefore, we decline to address Hamm's argument that the Stipulation was not voluntary because his trial counsel failed to advise him that he could rely on the Act in making a proportionality challenge to his sentence.

3. Hamm Entered Into the Stipulation Voluntarily

¶ 44 Hamm further contends that his equivocal answers at the Crim. P. 11 hearing demonstrate that he did not enter into the Stipulation voluntarily. Hamm's Crim. P. 11 colloquy with the court included the following questions and answers:

> THE COURT: Do you believe you have a good understanding of what's taking place with this stipulation?
>
> THE DEFENDANT: No, but -- yeah.
>
> THE COURT: Do you understand that what it is basically an agreement that I'm sentencing you to 30 years in the Department of Corrections, followed by a mandatory five-year period of parole?
>
> THE DEFENDANT: Yeah.

20

THE COURT: And have you entered into this stipulation voluntarily?

THE DEFENDANT: (No response.)

THE COURT: Yes?

THE DEFENDANT: Yeah.

THE COURT: Okay. Has anybody threatened you or forced you or made any promises to you, other than anything in the stipulation, in order to convince you to agree to this?

THE DEFENDANT: Yeah, the D.A., but -- yeah.

THE COURT: By that do you mean that otherwise the habitual charges go forward?

THE DEFENDANT: Yeah, but -- I understand.

THE COURT: Okay. But I need to make sure that you're doing this voluntarily, recognizing it's a difficult deal?

THE DEFENDANT: I have to take it, yes.

¶ 45    As our supreme court explained, determining whether a plea "represents the accused's free and reasoned decision" requires assessment of "the defendant's state of mind when he enter[ed] a guilty plea." *People v. Kyler*, 991 P.2d 810, 817 (Colo. 1999). A plea is not voluntary if "the accused's will was overborne in making the decision to plead guilty." *Id.*

21

¶ 46    The cases on which Hamm relies underscore the voluntariness

of the Stipulation, however.  *See Boykin v. Alabama*, 395 U.S. 238,

239, 243-44 (1969) (allowing the defendant to withdraw plea to five

capital crimes where the trial judge had asked no questions

concerning the plea and the defendant had not addressed the

court); *United States v. Truglio*, 493 F.2d 574, 579-80 (4th Cir.

1974) (allowing the defendant to withdraw plea where defense

counsel's simultaneous representation of five codefendants with

divergent interests resulted in ineffective assistance of counsel);

*Sanchez-Martinez v. People*, 250 P.3d 1248, 1258-59 (Colo. 2011)

(reversing denial of motion for postjudgment relief where illiterate

defendant had been told to sign advisal of rights form even though

it had not been read to him, he had difficulty hearing the

interpreter, and he "had very little if any conception of what was

happening"); c*f. Kyler*, 991 P.2d at 818-19 (holding that the

defendant voluntarily pled guilty despite being shackled as a

consequence of his prior escape attempts).

¶ 47    In contrast, the record reflects that

22

- the trial court engaged in a Crim. P. 11 colloquy with Hamm;

- Hamm addressed the court;

- Hamm's counsel represented only one defendant in the case;

- he was not shackled during the hearing on the Stipulation; and

- Hamm reads and speaks English.

¶ 48 Hamm faced the same type of decision all persons accused of crimes face when considering a plea: accept the stipulated sentence (here, thirty years imprisonment and five years of parole) or face the risk of conviction on the charges, which, for Hamm, would have resulted in a mandatory sixty-four-year sentence under the habitual criminal statute. Nothing in the record suggests that Hamm's "will was overborne" when he entered into the Stipulation. *Kyler*, 991 P.2d at 817.

¶ 49 For these reasons, we conclude that the Petition, files, and record establish that Hamm's argument for withdrawal of the Stipulation does not warrant postconviction relief. Therefore, the

district court did not err in denying Hamm's request for an evidentiary hearing on the enforceability of the Stipulation.

## IV. Conclusion

¶ 50    The district court's order is affirmed.

JUDGE ROMÁN and JUDGE J. JONES concur.